_____

No. 95-1393
_____

Steven Piepgras,                        *
                                        *
     Plaintiff - Appellant,             *
                                        *
     v.                                 * Appeal from the United States
                                        * District Court for the
Shirley S. Chater, Commissioner         * District of Minnesota.
of the Social Security                  *
Administration,                         *
                                        *
     Defendant - Appellee.              *


_____

          Submitted:  November 16, 1995

              Filed:  February 14, 1996
_____

Before HANSEN, JOHN R. GIBSON and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.


     Steven Piepgras appeals from the district court's[1] order
affirming an administrative law judge's denial of his application
for supplemental security income and disability insurance benefits.
Piepgras argues that the administrative law judge erred in
rejecting the opinions of two of his doctors.  He also argues that
the judge erred by asking the vocational expert a hypothetical
question which did not accurately state his impairments.  We affirm
the judgment of the district court.

     Piepgras is a thirty-nine-year-old man with a high school
education and experience working as a janitor, laundry attendant,

_____

     [1]The Honorable David S. Doty, United States District Judge for
the District of Minnesota.

film developer, film projectionist, general clerk, cruise control installer, and fast food worker. Piepgras claims he has been disabled since December 19, 1990 due to diabetes. He also asserts that he suffers from a personality disorder, depression, and bilateral carpal tunnel syndrome, which limits the use of his hands.

After conducting two days of hearings, the administrative law judge concluded that although Piepgras has severe impairments, he was not disabled and could still perform various jobs. The judge found that Piepgras suffered from "type I diabetes, [a] personality disorder, and an affective disorder." He also found that none of these impairments were disabilities which automatically qualified Piepgras for benefits under the Social Security Act. The judge determined, however, that these impairments did prevent Piepgras from performing the work he had done in the past. After describing Piepgras's impairments, age, education, and work experience to a vocational expert, the judge asked the expert if there were jobs which Piepgras could perform. The expert stated that Piepgras could perform light janitorial jobs and light jobs in packaging, stocking, order filing, and shipping and receiving, and that significant numbers of these jobs were available. The judge accepted the expert's statements and concluded that Piepgras was not entitled to benefits under the Social Security Act.

The Commissioner of the Social Security Administration adopted the judge's decision as her final decision. The district court affirmed the Commissioner's decision, and Piepgras appeals.

**I.**

Piepgras argues that the administrative law judge erred in rejecting the opinion of his treating physician, Dr. Schultz.

We must affirm the administrative law judge's decision if

substantial evidence on the record as a whole supports his decision. Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995). We may not reverse merely because substantial evidence would have supported an opposite decision. Id. A treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements. See Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991).

Piepgras argues that Dr. Schultz concluded that Piepgras could not hold a job because of his diabetes. He contends that the administrative law judge rejected Dr. Schultz's conclusion in finding that Piepgras's diabetes was not disabling.

Dr. Schultz's opinion of Piepgras's condition consists of vague, conclusory statements. In three short letters submitted to the judge, Dr. Schultz stated that Piepgras has had "an extremely difficult time managing his diabetes" because he cannot maintain the proper diet. Dr. Schultz also stated that because of this difficulty in controlling his diabetes, Piepgras has had "great difficulty" in keeping a job. Dr. Schultz did not explain what he meant by "extremely difficult" and "great difficulty" in his letters and he did not testify at Piepgras's hearings. In a written medical assessment, Dr. Schultz stated that Piepgras's blood sugar levels affected his ability to lift, carry, walk, stand, and withstand temperature extremes. Dr. Schultz, however, provided no explanation as to how Piepgras's blood sugar levels affected his abilities.

The administrative law judge did not reject Dr. Schultz's opinion, but merely stated that the opinion did not support Piepgras's claims of pain, numbness, fatigue, loss of stamina, tingling, blurred vision, double vision, headaches, and inability to understand basic instructions. It is impossible to tell whether Dr. Schultz's opinion supports or contradicts Piepgras's claims

because it contains no specifics concerning Piepgras's condition. We conclude that Dr. Schultz's opinion is of limited value due to its vagueness. Thus, Dr. Schultz's opinion deserves no greater deference than any other physician's opinion in the record. See Thomas, 928 F.2d at 259.

Dr. Hammarsten, a medical expert, testified that Piepgras should be able to do medium exertion work, provided it does not require fine work or prolonged reading. The record also shows that Piepgras performed a wide range of activities at the time he claimed to be disabled. Piepgras stated that he worked as a popcorn popper at a movie theater up to eight hours a day, two days a week, and that this job required him to stand for up to eight hours a day and to lift sixty-pound bags of unpopped popcorn and fifty-pound cans of popping oil. In addition to this part-time work, Piepgras stated that he cared for himself and his children, handled his family's finances, helped with grocery shopping, performed some household chores, entertained neighborhood children occasionally, and participated in church activities twice a week. Dr. Hammarsten's opinion and Piepgras's activities constitute substantial evidence supporting the judge's conclusion that Piepgras's diabetes was not disabling. In light of the substantial evidence which supports the judge's conclusion, the judge properly discounted the conclusory opinion of Piepgras's treating physician.

## II.

Piepgras argues that the administrative law judge improperly rejected Dr. Barron's opinion that Piepgras's mental problems prevented him from holding a job.

We must uphold the judge's conclusion that Piepgras's mental impairments were not disabling as long as it is supported by substantial evidence. Shannon, 54 F.3d at 486.

Two psychologists, Dr. Barron and Dr. Henze, examined Piepgras and evaluated his mental health. Dr. Barron evaluated Piepgras at the request of Piepgras's attorney and concluded that Piepgras was not "capable of withstanding work stresses, interacting appropriately with co-workers, supervisors, and the public, and meeting production requirements at an unskilled, competitive employment level." Dr. Henze, however, concluded that Piepgras did not have a problem relating to others and that he did not suffer from any impairment in his intellectual or memory abilities.

To resolve the conflict between Dr. Barron's and Dr. Henze's conclusions, the judge called Dr. Jacobson, a psychologist, to testify at a supplemental hearing. After examining all of the evidence and questioning Piepgras, Dr. Jacobson stated that Piepgras had only slight difficulties in relating to others and in concentrating while working. Dr. Jacobson concluded that Piepgras's mental problems did not interfere in any significant way with his ability to work.

Piepgras argues that the judge rejected Dr. Barron's opinion because Piepgras's attorney retained Dr. Barron. Piepgras contends that there is no evidence that Dr. Barron was biased and, therefore, the judge should not have given less weight to Dr. Barron's opinion.

The judge stated that he was rejecting Dr. Barron's opinion because it conflicted with the opinions of Dr. Henze and Dr. Jacobson. It is only after this statement that the judge also stated that he was inclined to give less weight to Dr. Barron's opinion because of Dr. Barron's interaction with Piepgras's attorney. There is no evidence in the record that Piepgras's attorney influenced Dr. Barron's evaluation of Piepgras. Nevertheless, the judge did not err in rejecting Dr. Barron's opinion because the opinions of Dr. Henze and Dr. Jacobson constitute substantial evidence supporting the judge's conclusion

-5-

that Piepgras's mental impairments were not disabling.

## III.

## A.

Piepgras argues that the judge's hypothetical question to the vocational expert was unclear and imprecise. While the judge's hypothetical question is long and contains much discussion between the judge, the expert, and the attorneys, the question clearly sets out Piepgras's impairments. Although the question could have been more precise, the complexity and number of Piepgras's impairments certainly justified the judge's discussions with the expert and his lengthy hypothetical question. We conclude that the judge's question was clear and precise in describing Piepgras's impairments.

## B.

Piepgras also argues that the judge's hypothetical question to the vocational expert did not accurately state his physical and mental impairments.

The judge's hypothetical question must include all of Piepgras's impairments which the judge found credible. See Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995).

Piepgras argues that the judge failed to take into account some of his impairments, such as his severely reduced ability to use his hands due to carpal tunnel syndrome, his inability to stand for longer than fifteen to twenty minutes at a time, his reduced intellectual ability, and his inability to get along with co-workers and the public. Piepgras contends that the judge's failure to tell the vocational expert about these limitations caused the expert to conclude that Piepgras could perform jobs which, in

reality, he cannot perform.

The record shows that the judge and the vocational expert took into account the impairments which Piepgras contends were overlooked. The judge and the expert specifically discussed Piepgras's reduced ability to use his hands, and the judge found that Piepgras should be able to use his hands as much as he did in his job as a popcorn popper. Piepgras's use of his hands as a popcorn popper is substantial evidence to support the judge's conclusion that his hands were capable of performing to that level. The judge's hypothetical question included this impairment to the extent that the judge found it credible. See Chamberlain, 47 F.3d at 1495.

The judge and the expert also discussed Piepgras's inability to stand for more than fifteen to twenty minutes at a time, his inability to interact well with others, and his inability to follow detailed instructions or perform complex jobs. The record shows that the expert carefully considered each of these impairments before determining that there were jobs which Piepgras could perform. The expert stated that there were 69,000 stock clerk, shipping and receiving clerk, and order filler clerk jobs, and 57,000 janitor jobs in Minnesota. After considering each of Piepgras's impairments, the expert concluded that Piepgras could perform only 7,000 of the clerk jobs and 10,000 of the janitor jobs because of his impairments. There was no error in the judge's hypothetical question to the vocational expert as it included, and the expert considered, all of Piepgras's impairments which the judge found credible. Id.

**IV.**

Finally, after the judge decided that Piepgras was not disabled, Piepgras submitted for the record a letter from Dr. Schultz, a letter from Dr. Barron, and a vocational expert's

evaluation of his ability to perform certain jobs.  The Appeals Council of the Social Security Administration considered this material and decided that it did not provide a basis for changing the judge's decision.  Our review is limited by statute to the final decision of the Commissioner, which is the judge's final decision.  We have no jurisdiction to review the Appeals Council's non-final decision to deny review.  See Browning v. Sullivan, 958 F.2d 817, 822-23 (8th Cir. 1992).  Additionally, we have reviewed this evidence and it does not change our conclusions in this case.  See Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994).

We affirm the judgment of the district court which affirms the Commissioner's denial of benefits.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-