_____

No. 95-3735
_____

Celestine Brown,                    *
                                    *
          Appellant,                *
                                    *   Appeal from the United States
     v.                             *   District Court for the
                                    *   District of Nebraska.
Shirley S. Chater,                  *
Commissioner of the Social          *
Security Administration,            *
                                    *
          Appellee.                 *

_____

                 Submitted:  April 8, 1996

                    Filed:  June 20, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN, and HANSEN, Circuit
     Judges.
_____

WOLLMAN, Circuit Judge.


     Celestine Brown appeals the district court's[1] judgment affirming the
denial of her application for Social Security disability benefits.  We
affirm.


                                I.


     Celestine Brown is a forty-six-year-old woman with a high school
degree.  After completing cosmetology school and two years of college, she
worked as a preschool teacher and as a telephone operator.  On December 15,
1992, Brown filed applications for Social Security disability benefits and
Supplemental Security

_____

     [1]The Honorable Thomas M. Shanahan, United States District
Judge for the District of Nebraska.

Income (SSI) benefits, alleging a disability onset date of October 20, 1989. Brown claimed that she was unable to work due to headaches; depression; fatigue; vision problems; muscle spasms; dizziness; swelling in her leg, ankle, feet, and hand; and pain in her neck, back, and shoulder. The Social Security Administration denied her applications initially and upon reconsideration. After conducting a hearing, the Administrative Law Judge (ALJ), found that Brown did not suffer from a disability as defined in the Social Security Act. The Appeals Council denied Brown's request for review and the district court affirmed. In this appeal, Brown alleges that the ALJ improperly disregarded her subjective complaints of pain and failed to adequately develop the record.

## II.

We will uphold the ALJ's decision to deny benefits if it is supported by substantial evidence on the record as a whole. Baumgarten v. Chater, 75 F.3d 366, 368 (8th Cir. 1996). Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's conclusion. Id. The ALJ, after following the five-step process set out in 20 C.F.R. §§ 404.1520 and 416.920, concluded that Brown did have medically determinable impairments including cervical and lumbar strains, dysthymia, major depression, and dependent personality disorder. He found, however, that the evidence failed to establish that the impairments were, singly or in combination, severe enough to constitute a disability under the Act. The ALJ concluded that Brown would be incapable of performing occupations that require lifting of more than twenty pounds or those occupations that require frequent lifting and carrying of items weighing more than ten pounds. He found, however, that Brown could return to her past relevant work as a telephone operator. After reviewing the record, we find there was sufficient evidence to support the ALJ's determinations.

Brown claims that her pain started after she fell down a flight of stairs on July 9, 1988, and that it was compounded by several automobile accidents occurring between 1989 and 1992. There is little objective medical evidence in the record that would support Brown's claim that her impairments are disabling. First, all of the tests conducted on Brown, including an arthrogram, X-rays of the neck and back, and a myelogram of the cervical and lumbar region, were normal.

In addition, Dr. Michael O'Neil, who examined Brown on December 18, 1989, noted that Brown's "symptoms of left shoulder pain and left neck pain are very generalized and not consistent with a cervical disc syndrome or a single nerve root injury or an injury to the soft tissues of the left shoulder." Dr. O'Neil could find no explanation for Brown's physical symptoms and believed that Brown would not have any permanent impairment as a result of the injury.

Diane Ratigan, a physical therapist, evaluated Brown on June 7, 1990. Ms. Ratigan believed that Brown was "capable of performing most aspects of her job," but noted that Brown's ability to perform her past work for more than 20 minutes at one time was limited by her pain. Although Ms. Ratigan's statement may lend support to a finding of disability, the ALJ was permitted to discredit the statement because the conclusion appeared to rest solely on Brown's complaints of pain. See Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993) (conclusory statement of disability based on claimant's subjective complaints of pain entitled to little weight when unsupported by objective medical evidence).

On June 28, 1990, Dr. James Rogers performed a vocational evaluation. He noted the absence of functional restrictions placed upon Brown by her treating physicians. Based on Ms. Ratigan's report, however, Dr. Rogers did not believe that Brown could return to her former job at the time of the evaluation. Nevertheless, he

stated that Brown could return to her previous work if she could get her pain under control.

In an examination performed following an automobile accident in March 1991, Dr. R. Schuyler Gooding stated that "although this patient may continue to have some discomfort in her neck and in her lower back, she is employable, and capable of holding down a job." In further support of the ALJ's finding of no disability, Dr. Gooding concluded that Brown did not appear to be in any significant distress during an examination conducted on March 15, 1993. Dr. Gooding "continue[d] to be of the impression that this patient can return to the work force." His report reflects that he "advised [Brown] that she will probably always experience some variable discomfort involving her neck and her lower back in view of the fact that she is not getting younger and that she is slightly overweight."

Moreover, Dr. William Johnson, who treated Brown from October 1, 1988, through October 2, 1990, and from December 30, 1991, through August 3, 1992, recommended conservative treatment for Brown's neck, arm, and shoulder pain, including medication, exercise, and physical therapy. In Brown's final visit on August 3, 1992, Dr. Johnson concluded that Brown had intermittent symptoms in her neck, left shoulder, and back. According to Dr. Johnson, Brown's examination failed to reveal more than mild limitation of motion and mild spasm. Finally, after performing a psychological evaluation of Brown on July 17, 1993, Dr. Thomas England, a psychologist, found that Brown exhibited symptoms of mild depression but had no gross mental problems.

Brown contends that the ALJ's decision to discount her subjective complaints of pain is unsupported by the record. In applying the factors set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), to analyze a claimant's subjective complaints of pain, an ALJ is required to examine: (1) the

-4-

claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. An ALJ may discount a claimant's subjective complaints of pain only if there are inconsistencies in the record as a whole.  Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993).

Applying the foregoing guidelines, the ALJ discounted Brown's complaints of disabling pain.  Although the ALJ considered Brown's impressive work history in assessing her credibility, he found that "[s]tanding alone, it says nothing concerning the individual's impairments, their effect upon his or her ability to function, or any residual abilities that individual might have for work in the national economy."  Next, the ALJ noted that the objective medical evidence failed to document any disabling impairment.  See Matthews v. Bowen, 879 F.2d 422, 425 (8th Cir. 1989) (medical evidence revealing only minor impairments was sufficient basis to discount claimant's complaint of disabling pain).  Consistent with the lack of objective medical evidence, Dr. England reported that "[Brown] gave the appearance of trying to draw attention to her problems, or perhaps even exaggerate them."  In addition, Ms. Ratigan's notes following Brown's evaluation revealed that Brown applied inconsistent effort in performing a strength test.

In further support of his decision, the ALJ noted the lack of any significant restrictions imposed by Brown's treating physicians.  See Smith, 987 F.2d at 1374 (lack of significant medical restrictions inconsistent with claimant's complaints of disabling pain).  Moreover, during Brown's evaluation in July 1993, Dr. England noted that Brown advised him that she was no longer undergoing active medical treatment for the pain in her shoulder and neck.  See Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989) (claimant's failure to comply with prescribed medical treatment inconsistent with complaints of disabling condition).  The ALJ also

-5-

considered the testimony given by Brown's brother, Jack Matthews, regarding Brown's alleged disabilities, but explicitly discounted the testimony upon finding that it was suspect. See Brockman v. Sullivan, 987 F.2d 1344, 1347 (8th Cir. 1993) (ALJ could discredit testimony given by claimant's roommate due to suspect nature of testimony); Basinger v. Heckler, 725 F.2d 1166, 1170 (8th Cir. 1984) (ALJ was free to disbelieve testimony given by claimant's witnesses).

Although it is true that Brown's daily activities demonstrate some limitations, the ALJ did not have to believe all of Brown's assertions concerning those daily activities. See Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987). For example, the record shows that Brown's daily activities consisted of taking medication, taking baths, lying down, eating crackers, listening to the radio, sleeping, occasional grocery shopping, going to church once a week, and dining at a relative's house on occasion. While these limitations, if accepted as credible, might have supported a disability finding, we will not substitute our opinion for that of the ALJ, who was in a better position to assess Brown's credibility than are we. Woolf, 3 F.3d at 1213.

Brown argues that the ALJ "ignored" Polaski by simply focusing on the factors that tended to support his findings and disregarding those factors that weighed in her favor. Essentially, she claims that it was error for the ALJ to merely pick and choose evidence from the record that supported his conclusions without discussing the evidence that favored her. Although the ALJ did not explicitly discuss each Polaski factor in a methodical fashion, he acknowledged and considered those factors before discounting Brown's subjective complaints of pain. What we said in an earlier case is applicable here: "An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where . . . the deficiency probably had no practical effect on the outcome of the case." Benskin, 830 F.2d at

883.

Brown next contends that the ALJ failed to adequately develop the record.  To the contrary, the record contains substantial documentation of Brown's medical history.  Because the ALJ fulfilled his duty in developing a reasonably complete record, <u>see</u>  <u>Clark v. Shalala</u>, 28 F.3d 828, 830-31 (8th Cir. 1994), this contention is without merit.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.