# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 03-2370

———————

Liza Strongson,                      *
                                     *
          Appellant,                 *
                                     *   Appeal from the United States
     v.                              *   District Court for the
                                     *   Western District of Missouri.
Jo Anne B. Barnhart, Commissioner    *
of Social Security,                  *
                                     *
          Appellee.                  *

———————

Submitted:  January 16, 2004

Filed:  March 23, 2004

———————

Before WOLLMAN, MORRIS SHEPPARD ARNOLD, and COLLOTON, Circuit
     Judges.

———————

WOLLMAN, Circuit Judge.

     Liza Strongson appeals from the district court's[1] order affirming the
Administrative Law Judge's (ALJ) denial of her application for disability insurance

_____

     [1]The Honorable John T. Maughmer, Chief United States Magistrate Judge for
the Western District of Missouri, to whom the case was assigned under 28 U.S.C. §
636(c), pursuant to the consent of the parties.

benefits and supplemental security income. Because the decision of the ALJ is supported by substantial evidence, we affirm.

## I.

Strongson, a 45-year-old woman with an eleventh grade education, claims that she has been disabled since July 12, 1999, as a result of fibromyalgia, reflex sympathetic dystrophy in her left arm, arthritis in her left knee, depression, and panic disorder. Her past work included the sales of automobiles, cosmetics, and computers, and included some management positions. Her most recent job as a computer sales representative, which she conducted from her own home, ended on July 12, 1999, when she was terminated because of her inability to perform up to expectations. Her application was denied initially, upon reconsideration, and after a hearing before the ALJ.

The ALJ conducted the five-step analysis prescribed by the social security regulations. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). The ALJ found that Strongson's impairments, when considered in combination, were severe. After finding that Strongson did not qualify under any of the listed impairments, see 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2003), and that she did not have the residual functional capacity (RFC) for her past work, the ALJ concluded that she nevertheless did have the RFC for jobs requiring a "light level of physical exertion." Relying on the testimony of a vocational expert, he found that such jobs are present in significant numbers in the local and national economies. The ALJ therefore concluded that Strongson was not disabled and could still perform some jobs in the national economy. In reaching his conclusion, he examined all the evidence, assigned "little probative value" to the opinions of two of her treating physicians, and concluded that Strongson's testimony was not entirely credible.

Strongson alleges on appeal that the ALJ improperly determined her RFC because he ignored the medical opinions of her treating sources and because he failed to apply the appropriate legal standard in evaluating her credibility.

## II.

We review de novo a district court decision affirming a denial of social security benefits and uphold the ALJ's decision if substantial evidence supports his findings. O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003). Substantial evidence is "less than a preponderance but is enough that a reasonable mind would find it adequate to support" the decision. Krogmeier, 294 F.3d at 1022. We examine the record as a whole, considering both the evidence that detracts from the Commissioner's decision and the evidence that supports the decision. Id. If substantial evidence supports the Commissioner's decision, we may not reverse even if we might have decided the case differently. Id. The ALJ must at least minimally articulate reasons for crediting or rejecting evidence of disability. Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

The ALJ should determine a claimant's RFC "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). He may not simply draw his own inferences about plaintiff's functional ability from medical reports. Shontos v. Barnhart, 328 F.3d 418, 427 (8th Cir. 2003). The ALJ described Strongson's RFC in detail:

> The claimant is capable of lifting and carrying up to 20 pounds occasionally, with more frequent lifting and carrying being limited to 10 pounds. No significant limitations exist with regards to the claimant's ability to sit, stand and or walk in a vocational capacity, but she should not be required to . . . perform activities requiring her to balance. The claimant has full use of the dominant right hand, but . . . she is not able to repetitively use the left hand for reaching, handling or fingering.

Significant mental and cognitive limitations also are present. While she can pay attention well enough to carry out a simple routine or repetitive activity, she cannot, [sic] sustain a high level of concentration, persist with precision work or work requiring attention to detail. She should avoid stressful work, should avoid fast-paced work, and should not be expected to adhere to explicit production quotas, deadlines or schedules. The claimant is not able to withstand the stress of changes in work settings.

ALJ Decision of Dec. 7, 2000, at 11.

### A.

Strongson contends that the ALJ improperly ignored medical opinions about her functional and vocational abilities. Strongson does not contend that the ALJ ignored all of her treating sources, but challenges only the ALJ's conclusions about her mental impairments, suggesting that the ALJ substituted his own opinion for that of the medical personnel who were giving her psychological treatment. She argues that the ALJ improperly disregarded the opinion of her psychologist, Dr. Harold Wolff, by assigning "little probative value" to Dr. Wolff's opinion. She also asserts that the ALJ's failure to request the treatment notes or opinions of Strongson's therapist, Carol Diamond, a licensed clinical social worker, constituted a dereliction of his duty to develop the record.

The ALJ should give more weight to the opinion of doctors who have treated a claimant regularly over a period of months or years because they have a "longitudinal picture of [the] impairment." Shontos, 328 F.3d at 426 (citing 20 C.F.R. § 404.1527(d)). It is appropriate, however, to disregard statements of opinion by a treating physician that "consist[s] of nothing more than vague, conclusory statements." Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir. 1996). In addition, the ALJ need not give controlling weight to a physician's RFC assessment that is

inconsistent with other substantial evidence in the record.  Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001).

In June 2000, Dr. Wolff, who had treated Strongson from October 1997 to March 2000, wrote a letter and completed a medical source statement about Strongson's condition and limitations.  A.R. at 429-32.  He described her condition as having improved, noted some success with medications, and expressed the belief that there was a "reasonable chance" that she would further improve in her psychiatric status.  The medical source statement requires the responding physician to rank the patient's functional abilities as "not significantly limited," "moderately limited," "markedly limited" or "extremely limited."  In completing the document, Dr. Wolff indicated numerous areas in which Strongson was not significantly limited and noted several moderate limitations related to understanding and carrying out instructions and responding to criticism, deadlines or changes in the work setting.  The only area in which he believed Strongson was markedly limited, however, was in her ability to complete a normal workday without interruption from psychologically-based symptoms and the need for significant rest periods.  A.R. at 432.  Dr. Wolff concluded his letter by stating that although as of his last interview with her (March 16, 2000), he regarded Strongson "as still vocationally impaired, [I] cannot say that she is permanently so."  A.R. at 429.

The ALJ specifically noted that Dr. Wolff's opinion was "without explanation or support from clinical findings" and was "not internally consistent with [his] own treatment notations."  ALJ Decision of Dec. 7, 2000, at 10.  We believe that substantial evidence in the record supports this conclusion.  It was reasonable for the ALJ to give little probative value to the conclusory statement that Strongson was vocationally impaired because it was neither within Dr. Wolff's expertise to determine vocational ability nor consistent with his findings of little to moderate limitations in all of Strongson's cognitive and other functional abilities.  The ALJ did not reject the moderate limitations Dr. Wolff indicated that Strongson was subject to

-5-

but instead incorporated many of them directly into the description of Strongson's RFC, which found that that her significant mental and cognitive limitations prevent her from maintaining high-level concentration, doing precision work, performing stressful or fast-paced work, meeting quotas or deadlines, and adapting to changes in her work setting or schedule. See ALJ Decision of Dec. 7, 2000, at 11. The other psychological evaluation in the record by one-time examiners R.R. Cottons, Ph.D. and David W. Bailey, PSAT, indicates similar functional limitations, in particular limitations in concentration and the ability to perform stressful, fast-paced or detailed work, but it does not conclude that Strongson is entirely unable to work.

Strongson argues that Ms. Diamond's opinion was necessary to a fully developed record and that the ALJ erred in not requesting it. It is improper for the ALJ to ignore opinion evidence from a therapist that is in the record and provides unique uncontroverted evidence of an impairment. See Shontos, 328 F.3d at 426-27 (noting that an ALJ should not ignore the opinions of "other" non-physician medical sources, including therapists, but should consider them under 20 C.F.R. § 404.1513(d)(1) to help assess the severity of an impairment). Because Ms. Diamond's opinion was not in the record as developed by the ALJ, the relevant question is whether the record is thus inadequate and incomplete.

As our court so recently and forcefully pointed out, it is well settled that it is the ALJ's duty to develop the record fully and fairly. Snead v. Barnhart, No. 03-2430, 2004 WL 439497, at *3-4 (8th Cir. March 11, 2004). This duty includes the responsibility of ensuring that the record includes evidence from a treating physician, or at least an examining physician, addressing the particular impairments at issue. Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000) (holding that it was improper for the ALJ to rely on the opinions of reviewing physicians alone). In this case, there is substantial psychological evidence in the record, from both treating and examining physicians. Each of these sources described Strongson's functional abilities. Accordingly, we conclude that the ALJ's failure to obtain Ms. Diamond's views does

not vitiate the force of the findings he made regarding Strongson's functional abilities.

**B.**

Strongson contends that the ALJ failed to conduct an appropriate analysis in the process of judging the credibility of her testimony and her subjective complaints of pain. In analyzing a claimant's subjective complaints of pain, an ALJ must examine several factors: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) the dosage, effectiveness and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1994)). Other relevant factors include the claimant's past relevant work history and the absence of objective medical evidence in support of the complaints. Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999). The ALJ may disbelieve subjective complaints "if there are inconsistencies in the evidence as a whole," Goodale v. Halter, 257 F.3d 771, 774 (8th Cir. 2001) (citation omitted), but he must give reasons for discrediting the claimant. Jones v. Callahan, 122 F.3d 1148, 1151 (8th Cir. 1997).

The ALJ need not explicitly discuss each Polaski factor. Brown, 87 F.3d at 966. It is sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints. Id. We will not set aside an administrative finding based on an "arguable deficiency in opinion-writing technique" when it is unlikely it affected the outcome. Id. (citing Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987). In this case, the ALJ stated he was considering the factors and then went on to discuss in detail why he believed the medical evidence was inconsistent with Strongson's testimony. He did not reject her testimony solely because of her demeanor, but analyzed the evidence. The ALJ was in a better position than this court to assess Strongson's credibility, id., and we find no error in that assessment.

The ALJ found that Strongson's testimony was "not fully credible, especially to the extent that her allegations would suggest that she is totally incapacitated for any type of work." ALJ Decision of Dec. 7, 2000, at 8. He stated that her testimony at the hearing was inconsistent with the reports of her routine daily activities and with the medical clinical findings and the course of her medical treatment. Id. at 9. In addition, he noted that there was no evidence that Strongson's condition was worse after she was terminated than before; the nature of her pain complaints migrated from one location to another; trigger points were not identified to support her claimed fibromyalgia; tests did not support her claimed rheumatological disorders; and her residual functional capacity was such that she had been able to help remodel her own home. Id. Finally, the ALJ found that Strongson, who was living with her boyfriend and was receiving alimony, was lacking in her motivation to return to the work force. Id. at 10.

We conclude that the ALJ's determination of Strongson's RFC incorporated the relevant medical evidence and that his credibility analysis took into account all appropriate factors. Likewise, his hypothetical question included all the impairments he found to be credible. See Piepgras, 76 F.3d at 237. The testimony of the vocational expert constituted substantial evidence that there are jobs in substantial numbers in the local and national economies that Strongson can perform.

The judgment is affirmed.

_____