**Patricia A. GROVE, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 4:04 CV 657 RP TJS.**

United States District Court, S.D. Iowa, Central Division.

Aug. 22, 2005.

Maureen McGuire, U S Attorney's Office, Des Moines, IA, for Commissioner of Social Security unknown, Defendant.

Thomas A Krause, West Des Moines, Jean M. Mauss, Max Schott & Associates, PC, Des Moines, IA, for Patricia A. Grove, Plaintiff.

## ORDER

PRATT, District Judge.

Plaintiff, Patricia A. Grove, filed a Complaint in this Court on November 22, 2004, seeking review of the Commissioner's decision to deny her claim for Social Security benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the decision of the Commissioner is reversed.

### PROCEDURAL BACKGROUND

Plaintiff filed applications for Social Security Disability Benefits on November 13, 2001, claiming to be disabled since September 23, 1998. Tr. at 79–81 & 338–42. Plaintiff was last insured for disability benefits at the end of September 2003. Tr. at 29. Plaintiff, whose date of birth is April

22, 1955 (Tr. at 79), was 49 at the time of the hearing. Tr. at 38. After the applications were denied, initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge. A hearing was held before Administrative Law Judge Stanley R. Hogg (ALJ) on June 16, 2004. Tr. at 35–63. The ALJ issued a Notice Of Decision—Unfavorable on July 27, 2004. Tr. at 10–30. After the decision was affirmed by the Appeals Council on September 24, 2004, (Tr. at 5–7), Plaintiff filed a Complaint in this Court on November 22, 2004.

 In his decision, the ALJ noted that Plaintiff had filed previous applications for benefits which were denied initially on May 3, 1999. No appeal was perfected. The ALJ held that the prior denial was final and could not be reopened. Tr. at 13. This Court is without jurisdiction to review that finding. *Califano v. Sanders,* 430 U.S. 99, 107–08, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977).

Following the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability date. At the second step of the sequential evaluation, the ALJ found that Plaintiff's severe impairments: "chronic right foot pain, status post multiple surgical procedures; right shoulder strain; and chronic back strain." The ALJ also found that Plaintiff has impairments which are not severe as the term is defined in 20 C.F.R. §§ 404.1520(c) and 416.920(b). These impairments are "cellulitis, status-post degloving injury to her chin; hypertension; hyperlipidemia; bronchitis; headaches; vertiginous episode; gastritis; obesity and depression." The ALJ found that none of these impairments are severe enough to qualify for benefits at the third step of the sequential evaluation. At the fourth step, the ALJ found:

The claimant retains the residual functional capacity to perform a wide range of sedentary work. She can lift, carry, push and pull 10 pounds frequently. She can stand and/or walk for 2 hours, and sit for 6 hours during the course of an 8–hour workday. She would be limited to no more than occasional overhead reaching, and occasional climbing, balancing, stooping, kneeling, crouching, or crawling. She has no other postural, manipulative, visual, communicative, environmental, or mental limitations.

Given that residual functional capacity, the ALJ found that Plaintiff is unable to perform her past relevant work. Tr. at 29. At the fifth step, the ALJ, relying on Rule 201.19 and 201.20, there are unskilled sedentary jobs that Plaintiff is able to do. The ALJ found that Plaintiff's capacity for sedentary work is substantially intact and has not been compromised by any nonexertional limitations. The ALJ found, therefore, that Plaintiff is not disabled nor is she entitled to the benefits for which she applied.

Plaintiff argues that the ALJ made three errors which require reversal and an award of benefits. First, it is argued, the ALJ erred in his rejection of the opinion of the treating physician regarding Plaintiff's inability to sustain work. Second, that the ALJ failed to evaluate Plaintiff's credibility according to the standards set forth in *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir.1984). Third, that the ALJ failed to fully and fairly develop the record regarding neuropsychological limitations. The Commissioner takes a contrary position.

## MEDICAL EVIDENCE

Plaintiff was involved in a motor vehicle accident in 1998. On September 23, 1998, she saw M.W. Hill, M.D. for evaluation of lacerations to her chin and oral cavity. Dr. Hill reported that Plaintiff was follow-

ing a car with a trailer. The trailer came loose and struck Plaintiff's car. Plaintiff complained of pain over the anterior mandible. The doctor saw a 3 cm laceration in this area. Plaintiff had been swallowing some blood. After his examination, Dr. Hill's impression was 1) degloving laceration of the mandibular sulcus, and 2) through-and through laceration of the anterior chin. The doctor took Plaintiff to the operating room for repair of the lacerations. Tr. at 152. On October 2, 1998, the staples were removed from Plaintiff's scalp. Dr. Hill opined that Plaintiff was "turning the corner." On October 19, 1998, Dr. Hill wrote that the laceration was healing nicely. He suspected that it would take 4–6 months before the paresthesia and swelling decreased significantly because of the extensive muscle injury. Tr. at 151. On December 23, 1998, Dr. Hill saw Plaintiff and wrote that the areas of tingling, represented renervation. On May 3, 1999, Plaintiff complained to Dr. Hill of tenderness and swelling in her chin. The doctor thought that there may be some type of foreign body that was extruding. Tr. at 150.

On June 29, 1999, Plaintiff was seen at the McFarland Clinic for an infection to her right foot. It was noted that during the car accident, Plaintiff had a fracture/dislocation to the tarsal/metatarsal joint of her right foot. Plaintiff had undergone surgical repair and wore a cast for until May 24, 1998. When the cast was removed, infection could be seen for which antibiotics were prescribed. X-rays showed three screws across the medial right midtarsus. "Some of the bone is questionable for possible osteo with moth-eaten formation around the femoral and medial cuneiform. The cuneiform articulation does not show complete bony union." Tr. at 145. The doctor (Gilarski) stated that the screw should be removed at once. He said that if osteomyelitis was seen, Plaintiff should be kept non-weight-bear-ing until the foot regained strength. Tr. at 144. Robert Weatherwax, M.D. removed the screws and debrideded the wound on the right foot on July 19, 1999. Tr. at 135–36.

On October 2, 2000, Plaintiff complained to Dr. Hill of swelling and tenderness in the right chin which had begun over the weekend. Again, the doctor thought is was a retained foreign body in the soft tissues of the chin. Tr. at 149.

Plaintiff saw Dr. Gilarski again on November 1, 2000. It was noted that Plaintiff had seen a Dr. Weatherwax the day after Dr. Gilarski's June 29, 1999 appointment. Plaintiff reported that after being treated with antibiotics, the screws were left in place for one month and then removed. Although Dr. Weatherwax had told Plaintiff that her foot had completely healed, and that she should be able to do whatever she desired, she felt as though she had a bulge on the inferior aspect of the first metatarsal head and that her foot swells. Plaintiff reported that she was only able to walk or wear shoes for an hour. She said that her foot hurts her all the time. Plaintiff's medication included Prozac, Cytotec, and Ibuprofen. It was difficult for the doctor to detect motor strength because of Plaintiff's hyperesthesia. Tr. at 142. An analysis of Plaintiff's gait showed that she could not toe walk, and walked on the outside aspect of the right foot. She said that her foot felt cold. X-rays showed obliteration of the first metatarsal cuneiform, first cuneiform navicular and first and second cuneiform joints. Sclerosis was seen. Plaintiff was referred to physical therapy, in which the doctor opined Plaintiff would need to stay for quite a while. Plaintiff returned to Dr. Gilarski on December 13, 2000. Plaintiff reported no benefit from physical therapy. Plaintiff reported shooting pain from the toe up to her hip. She said that it hurt to

walk. Plaintiff was no longer working as a driver for the Wolfe Clinic, transporting charts and supplies. Tr. at 140. On January 4, 2001, Dr. Gilarski fitted Plaintiff for orthotics. She had persistent pain to the right mid tarsus. Tr. at 139.

On November 29, 2000, Plaintiff saw Daniel J. Blum, M.D. for evaluation of a rapidly enlarging lesion of the cutaneous aspect of the mid left lower lid. She had first noticed it about two weeks before the evaluation. It had appeared without any apparent injury. The doctor cauterized the wound and gave Plaintiff ointment to apply. Tr. at 148.

On August 1, 2001, Plaintiff complained of pain in her chin. On examination, the doctor found some fullness. The doctor wrote that he had always been suspicious that there was some type of deep retained foreign body. He explained that a surgery could be done, and they may or may not find something. Tr. at 146.

On January 9, 2002, Plaintiff saw psychologist Michael J. Luttrell, M.S. for an evaluation at the request of Disability Determination Services. Tr. at 156–59. Plaintiff reported being unable to work because her foot prevented her from sitting or standing for periods of time. Plaintiff had just finished a course of Zithromax for infection in her chin. Plaintiff reported memory problems. Plaintiff reported getting angry and frustrated because she can't do the things she wants to. She reported difficulty sleeping due to foot pain. She reported periodic feelings of helplessness and hopelessness but denied thoughts of suicide. Plaintiff said that her family doctor had been prescribing Prozac since her accident. Tr. at 156. On mental status examination, no significant depression or anxiety were noted. When reviewing activities of daily living, Plaintiff reported that she frequently needed to sit or lie down while doing household chores. Tr. at 157. Mr. Luttrell administered a Wechsler Memory Scale—Third Edition which showed less than average ability to recall new information after a brief interval and after a delay of 25 to 30 minutes, suggesting difficulties retaining auditory information. The testing suggested, according to Mr. Luttrell, that when information was presented visually, Plaintiff would have no significant difficulties remembering and understanding instructions, procedures or locations. When the information was presented auditorily, on the other hand, she would have difficulty retrieving the information until it is learned. The psychologist opined that Plaintiff's judgment is not impaired and that she should be able to interact appropriately with others. Tr. at 158.

A letter dated January 18, 2002, from Neuropsychologist Thomas J. Haley, Ph.D. states that his neuropsychological evaluation indicated memory difficulties, procedural problems, attention and concentration difficulties, and some word-finding difficulties. Dr. Haley stated that he was of the opinion that the report of his evaluation should already be a part of the record, but the report does not appear.

On January 23, 2002, Plaintiff saw John E. Reinertson, M.D., of the McFarland Clinic, for a disability physical. Plaintiff told the doctor that whenever she tries to walk or stand she feels a lump in her foot. The doctor noted the very severe fracture in her right foot. Plaintiff reported constant right shoulder and biceps pain. She said she has soreness of her chin with recurrent infection, throbbing, and numbness. Plaintiff said she has headaches all day, every day with significant decrease in her concentration and short-term memory. Tr. at 161. The doctor wrote that Plaintiff's history is consistent with the medical records he reviewed. The doctor opined that Plaintiff was not able to work at any job requiring walking or standing. He

said that Plaintiff's foot pain was "exquisitely distressing to her." Tr. at 162.

Plaintiff was seen for physical therapy for low back pain a total of nine times between August 22 and September 19, 2002. Tani Lane, MS/PT, wrote that at the time of the last visit, Plaintiff reported improvement and that objective tests were within normal limits. Tr. at 183.

On September 18, 2002, Plaintiff saw Timothy C. Lowry, M.D. of McFarland Clinic, for an Iowa Department of Disability Determination Services Bureau Comprehensive Examination Report. Tr. at 179–82. Plaintiff reported that on the day of her accident, she was driving at highway speed when the trailer in front of her came loose and struck her car. Plaintiff said that her foot hurts her so bad that she is unable to wear shoes. She said that in the winter time, she wears socks and moccasins. She reported pain in her right arm, shoulder and hand with occasional numbness swelling, and decreased strength. Plaintiff said that she suffered vertigo from the time of the accident and still had occasional vertiginous symptoms. Plaintiff complained of pain from the right hip extending down the length of the right leg. Tr. at 179. At the time of the examination, Plaintiff's medications were: OxyContin, Neurontin, Prozac, Celebrex, Nexium, Doxepin, and Keflex. Tr. at 180. After his examination (Tr. at 181), the doctor opined that Plaintiff's ability to work was limited in that she could not lift or carry any sort of weight. He said that Plaintiff could not stand for any length of time. He noted that Plaintiff had said that she can walk about a block before her right leg gives out. He said that Plaintiff may be able to sit and work "at least a partial day," "with proper ergonomics." The doctor said that Plaintiff's ability to drive is significantly limited by chronic right foot pain syndrome with posttraumatic neuropathic pain. The doctor also mentioned chronic back pain and chronic headaches. Tr. at 182.

Treatment notes from the McFarland Clinic are in the record at pages 207–60, covering the period September 29, 1997 through December 8, 2003. In a letter dated February 5, 2003, Dr. Reinertson opined that Plaintiff was unable to do any sort of lifting or carrying because of the limitation on her walking and pain in her right shoulder. The doctor opined that Plaintiff is not able to stand or walk two hours of an eight hour work day. "She currently cannot make it standing to do the dishes or walking into a store even when she is parked close." The doctor said that with proper ergonomics, Plaintiff might be able to sit for 6 out of 8 hours. Tr. at 216. The doctor wrote: "Unfortunately, as we increase her pain medication, this would tend to further impair her ability to concentrate, so we have to strike a balance now between effects of her medicines and effects of her pain." The doctor continued:

> I was quite hopeful last year that we would be able to improve her control of her pain and achieve a better functional outcome for Ms. Grove. I am disappointed that medicine has been unable to do that for her. Certainly with our current treatments and state of medical knowledge, neither Dr. Lowry nor myself have been able to come up with a combination that gives both relief of her symptoms and allows her to be a normally productive individual. There is no doubt in my mind she is presently and for the foreseeable future completely disabled.

Tr. at 212.

On December 13, 2003, Plaintiff was a passenger in a car that was struck "by a southbound vehicle that hit the driver's side more towards the rear of the car causing the car to spin out of control and

run into a tree which is the same side that the passenger was on." Tr. at 265. After being seen at the hospital in Marshalltown, Plaintiff was allowed to go home after an examination. Tr. at 266.

## DISCUSSION

The scope of this Court's review is whether the decision of the Secretary in denying disability benefits is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). *See Lorenzen v. Chater,* 71 F.3d 316, 318 (8th Cir.1995). Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support the conclusion. *Pickney v. Chater,* 96 F.3d 294, 296 (8th Cir.1996). We must consider both evidence that supports the Secretary's decision and that which detracts from it, but the denial of benefits shall not be overturned merely because substantial evidence exists in the record to support a contrary decision. *Johnson v. Chater,* 87 F.3d 1015, 1017 (8th Cir.1996) (citations omitted). When evaluating contradictory evidence, if two inconsistent positions are possible and one represents the Secretary's findings, this Court must affirm. *Orrick v. Sullivan,* 966 F.2d 368, 371 (8th Cir.1992) (citation omitted). *Fenton v. Apfel,* 149 F.3d 907, 910–11 (8th Cir.1998).

In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir.1975). *See also Patrick v. Barnhart,* 323 F.3d 592, 595 (8th Cir.2003).

In this case, the ALJ found Plaintiff can perform a full range of sedentary work which is defined in 20 C.F.R. § 404.1567(a):

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Although an ALJ must assess residual functional capacity on the basis of all the evidence in the record, it is a medical question and must be supported by some medical evidence. *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir.2001); *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir.2004). In *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982)(en banc), the Court wrote:

Probably the most important issue will be the question of RFC, and it is important to note how the Guidelines define it. . . . The grid does not apply if one's RFC is to do this kind of work only intermittently. . . . The RFC that must be found if the grid is to be used, in the case of sedentary and medium work, as well as light work, is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.

In a footnote to this quotation, the Court wrote that for those very reasons, fairness requires that the treating physician be afforded an equal opportunity to address key issues along with physicians who opine regarding the claimant's residual functional capacity without an examination as well as non-treating physicians who examine the claimant. The Court of Appeals for the Eighth Circuit has consistently held this

position. *See, e.g. Strongson,* 361 F.3d 1066, 1070 in which the Court held that the ALJ should give more weight to the opinion of the treating physician who has treated the claimant regularly over a period of months or years because they have a longitudinal picture of the impairment.

■ The Court is unable to find any substantial medical evidence that Plaintiff retains the residual functional capacity to perform sedentary work on a full time basis, let alone a full range. Dr. Reinertson, the physician who knows Plaintiff best, stated more than once that Plaintiff is unable to work at any job that requires standing or walking, a certain amount of which is required in sedentary work. Plaintiff takes strong medication to control her pain. Dr. Reinertson wrote that the medication either did not control the pain or it interfered with Plaintiff's ability to concentrate. Dr. Reinertson's opinion does not stand alone. Dr. Lowry who examined Plaintiff stated that the chronic pain in Plaintiff's foot prevented her from wearing shoes and at times socks. Dr. Lowry stated that Plaintiff could not work at any job that required lifting or carrying "any sort of weight." Dr. Lowry wrote: "Her ability to sit may be somewhat compromised but with proper ergonomics, may be able to work at least a partial day." At step five of the sequential evaluation, a claimant must have the ability to work on a full time basis. *Bladow v. Apfel,* 205 F.3d 356, 359 (8th Cir.2000) citing SSR 96–8P, 1996 WL 374184, at *1 (Social Security Administration, July 2, 1996); and *Kelley v. Apfel,* 185 F.3d 1211, 1214 (11th Cir. 1999)("... at step five, the government's present representation is that only an ability to do full-time work will permit the ALJ to render a decision of not disabled.") Dr. Lowry's statement that Plaintiff might be able to work at a job where she could sit "with proper ergonomics" also misses the point of a Social Security disability adjudication. In *Eback v. Chater,* 94 F.3d 410, 412 (8th Cir.1996), the Court cited a statement issued by the Associate Commissioner of Social Security stating that the inquiry at step five is based on the functional demands of jobs as ordinarily required by employers throughout the national economy. "Whether or how an employer might be willing (or required) to alter job duties to suit the limitations of a specific individual would not be relevant because our assessment must be based on broad vocational patterns ... rather than on any individual employer's practices." *Id.*

■ In the opinion of the this Court, Plaintiff has proved her disability by medical evidence. There is, therefore, no need to remand for any reason other than to award the benefits to which she is entitled. *Talbott v. Bowen,* 821 F.2d 511, 515 (8th Cir.1987); *Duncan v. Barnhart,* 368 F.3d 820, 824 (8th Cir.2004) citing *McCoy v. Schweiker,* 683 F.2d 1138 (8th Cir.1982)(en banc) and *Gavin v. Heckler,* 811 F.2d 1195 (8th Cir.1987).

### CONCLUSION AND DECISION

It is the holding of this Court that Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court finds that the evidence in this record is transparently one sided against the Commissioner's decision. *See Bradley v. Bowen,* 660 F.Supp. 276, 279 (W.D.Ark.1987). A remand to take additional evidence would only delay the receipt of benefits to which Plaintiff is entitled.

The final decision of the Commissioner is reversed and the Commissioner is ordered to award Plaintiff the benefits to which she is entitled. Plaintiff has been disabled since October 30, 2001, after which the ALJ found no substantial gainful activity.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel,* 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406 B), and LR 54.2(b)[1]. *See also, Gisbrecht v. Barnhart,* 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002); *Mitchell v. Barnhart,* 376 F.Supp.2d 916 (S.D.Iowa 2005).

IT IS SO ORDERED.

---

1. N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified."