# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2619

_____

Richard Welsh

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner of Social Security

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: April 17, 2014
Filed: September 2, 2014

_____

Before LOKEN and MURPHY, Circuit Judges, and PERRY,[*] District Judge.

_____

LOKEN, Circuit Judge.

Richard Welsh applied for Social Security disability and supplemental security income benefits. Following an administrative hearing, the ALJ denied the application, concluding that Welsh's severe impairments precluded return to his past relevant

_____

[*]The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

work, but he retained the residual functional capacity to perform sedentary work as a surveillance systems monitor and a call out operator.  The district court remanded for further proceedings because the ALJ failed to resolve inconsistencies between the testimony of a vocational expert ("VE") and work descriptions of those jobs in the Department of Labor's Dictionary of Occupational Titles ("DOT").

On remand, a second ALJ more thoroughly questioned the VE regarding her opinion that Welsh could perform sedentary work as a surveillance systems monitor and call out operator, and that jobs Welsh could perform exist in significant numbers in the national or regional economies.  Crediting the VE's testimony that her opinion was consistent with the occupational information about those jobs in the  DOT, the ALJ in a thorough written decision denied Welsh's claim for benefits.   The Commissioner's Appeals Council denied an administrative appeal.  In this action, Welsh seeks judicial review of the adverse agency decision.  The district court[1] affirmed the denial of benefits in a thorough opinion.  Welsh appeals.  We review the district court's decision upholding the denial of benefits *de novo* but, like the district court, we must uphold the ALJ's decision if it is supported by substantial evidence on the administrative record as a whole.  Renfrow v. Astrue, 496 F.3d 918, 920 (8th Cir. 2007).  Applying this standard of review, we affirm.

**I.**

After the second administrative hearing, which primarily addressed the issue on which the district court remanded, the ALJ again concluded that Welsh had multiple serious impairments that did not meet the criteria of a listed impairment -- rotator cuff tears, a right knee meniscus tear, carpel tunnel disease, right traumatic

---

[1]The Honorable Jon Stuart Scoles, Chief Magistrate Judge for the Northern District of Iowa, who heard the case with the consent of the parties pursuant to 28 U.S.C. § 636(c).

brachial plexopathy, depression, anxiety, obesity, COPD, and a history of polysubstance abuse. The ALJ next found that Welsh -

> has the residual functional capacity [RFC] to perform sedentary work as defined in [the regulations] except: he can only lift five pounds with either upper extremity. Moreover, he cannot climb ladders, ropes, or scaffolds, and may only occasionally climb ramps or stairs. The claimant can occasionally balance, stoop, kneel, crouch, or crawl. However, he may not reach overhead bilaterally, and while he is left-hand dominant, he may only occasionally finger with his right hand. Moreover, he cannot be required to drive, and he must avoid concentrated exposure to extremes of cold and hazards. Finally, he is limited to simple, routine, repetitive work with only simple, work-related decisions and few workplace changes.

The ALJ found at step four of the Commissioner's five-step disability determination process[2] that Welsh was unable to perform his past relevant work. Proceeding to step five, after posing a hypothetical consistent with the RFC he had found, the ALJ asked the VE, "Can such a person perform any past work or any other work?" The VE responded that, even with these additional limitations, this person could perform the duties of two sedentary jobs, surveillance systems monitor and call out operator. The VE was then extensively questioned by the ALJ and cross-examined by Welsh's attorney regarding information in the DOT descriptions of those jobs that is inconsistent with the RFC -- that the surveillance systems monitor and call out operator jobs require occasional lifting up to ten pounds, and the fact that the left-hand dominant Welsh can only do work that requires little if any handling or fingering with his right hand. In response, the VE noted that DOT sedentary job descriptions requiring the ability to occasionally lift up to ten pounds are at the outer limit of what might be required in a particular job; based on her experience observing people at work, surveillance systems monitor and call out operator jobs do not require lifting

---

[2]See 20 C.F.R. §§ 404.1520(a), 416.920(a).

more than five pounds. In addition, relying on a survey of employers and employees reported in the *Journal of Forensic Vocational Analysis*, the VE explained that these jobs could be adequately performed with one arm. Near the end of this testimony, the ALJ asked:

> Q . . . Is your testimony today consistent with the Dictionary of Occupational Titles? I understand there's some changes here.

> A It's consistent with the Dictionary of Occupational Titles and I've been asked my opinion about various other publications.

> Q Yes, obviously you've gone beyond what they say in the DOT and you've explained the basis of your opinion today. Okay.

> A Yes.

The ALJ's written decision concluded that Welsh was not disabled prior to April 27, 2012,[3] based on the VE's testimony that there were jobs that existed in significant numbers in the national and Iowa economies that Welsh could have performed. Citing Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000), a Policy Interpretation Ruling for "Resolving Conflict in Occupational Information" at steps four and five of the sequential evaluation process, the ALJ found that (i) the VE's testimony was consistent with the information contained in the DOT, and (ii) her opinion that surveillance systems monitor and call out operator jobs would be available in adequate numbers despite Welsh's right arm impairment was reasonably supported by the VE's personal experience observing the jobs listed and her professional reliance on a survey of employers and employees reported in the *Journal of Forensic Vocational Analysis*. The district court affirmed the Commissioner's decision after a thorough review of these issues.

---

[3]The ALJ awarded benefits after that date because Welsh's age then became "an increasingly adverse vocational factor" under the Commissioner's regulations.

## II.

**A.** On appeal, Welsh first argues that a remand is required because the ALJ failed to explicitly consider Social Security Ruling 96-9p, 1996 WL 374185 (July 2, 1996). This Ruling outlines the proper analysis when a claimant's RFC limits him to less than a full range of sedentary work, a situation in which "the occupational base will be 'eroded' by the [disability claimant's] additional limitations and restrictions." SSR 96-9p provides: "Where there is more than a slight impact on the individual's ability to perform the full range of sedentary work . . . the adjudicator must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country." The Ruling advises that "it may be useful to consult a vocational resource." This is precisely the analysis the ALJ conducted, relying on the VE's testimony and opinions. Thus, the failure to explicitly refer to SSR 96-9p was an arguable deficiency in opinion writing that had no practical effect on the decision and therefore is not a sufficient reason to set aside the ALJ's decision. Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).

**B.** Welsh next argues the ALJ erred in finding that the VE reasonably resolved the discrepancy between her testimony that Welsh could perform the surveillance systems monitor and call out operator jobs, based upon the RFC found by the ALJ, and the DOT descriptions for those sedentary jobs. A conflict existed, Welsh contends, because (i) the ALJ's RFC limited him to exerting five pounds of force occasionally, whereas the DOT descriptions for both jobs require exerting up to ten pounds; (ii) the RFC limited him to simple, routine, repetitive work, whereas the DOT descriptions require level three reasoning capability; and (iii) the RFC said he cannot do overhead reaching with either arm, whereas the DOT description for call out operator requires occasional reaching, which is defined to include overhead reaching.

-5-

The district court rejected this contention, concluding that the ALJ's questioning and the VE's responsive testimony were consistent with this court's approach to the DOT, which treats the DOT as "generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." Wheeler v. Apfel, 224 F.3d 891, 897 (8th Cir. 2000) (quotation omitted). Welsh argues the ALJ failed to engage in the analysis required by SSR 00-4p:

> "When there is an apparent unresolved conflict between the VE . . . and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . . At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."

In Kemp v. Colvin, 743 F.3d 630, 633 (8th Cir. 2014), we construed SSR 00-4p as placing on the ALJ an affirmative responsibility to ask about "any possible conflict" between VE evidence and the DOT, and to obtain an explanation for any such conflict, before relying on VE evidence to support a determination the claimant is not disabled. Here, following the initial remand for further consideration of this issue, the ALJ explicitly asked the VE whether her opinions were inconsistent with the DOT descriptions. Agreeing with the VE that the DOT descriptions are maximum possible job requirements that are not required to do all jobs in every category, as we held in Hillier v. Soc. Sec. Admin., 486 F.3d 359, 366-67 (8th Cir. 2007), the ALJ accepted the VE's opinion that there was no inconsistency. The ALJ then found that the VE had reasonably explained her opinion that a person with the RFC described in the ALJ's hypothetical could adequately perform the job duties of surveillance systems monitor and call out operator.

When an ALJ has posed a hypothetical that accurately reflects his RFC finding, questioned the VE about any apparent inconsistencies with the relevant DOT job descriptions, and explained his decision to credit the VE's testimony, the ALJ has complied with SSR 00-4p, and we review his decision under the deferential substantial

evidence standard. See Jones v. Astrue, 619 F.3d 963, 978 (8th Cir. 2010). Welsh argues the VE's explanations were based upon insufficient personal experience and unreliable scholarly literature, but these were fact issues for the ALJ to resolve. SSR 00-4p specifically provides that, in crediting VE testimony over a DOT listing, an ALJ may rely on "[i]nformation about a particular job's requirements . . . available in other reliable publications, information obtained directly from employers, or from a VE's . . . experience in job placement or career counseling." The failure to address any potential inconsistency between the RFC's limitation to simple, routine, repetitive work and the DOT's requirement of level three reasoning does not require a remand. See Renfrow, 496 F.3d at 921.

**C.** Finally, Welsh argues the ALJ erred in finding "there is a significant number of jobs (in one or more occupations) having requirements which [Welsh is] able to meet." 20 C.F.R. §§ 404.1566(b), 416.966(b). Relying on the VE's testimony, the ALJ found there were 330 surveillance systems monitor and call out operator positions existing in Iowa, and 36,000 positions nationally. Welsh argues the ALJ erred in relying on this testimony because the VE admitted that some of those Iowa jobs could not be performed by someone with Welsh's additional limitations (in particular, his lack of bilateral dexterity), and some were part-time rather than full-time positions, whereas the RFC determination is based on a person's ability to work on a regular and continuing basis, meaning eight hours a day, five days a week.

In Dipple v. Astrue, 601 F.3d 833, 836 (8th Cir. 2010), the VE testified that the claimant could perform identified jobs that existed in the "thousands" in Illinois and Iowa; we held that the VE "was neither required to articulate the percentage of available jobs that were part-time or full-time, nor to describe labor market conditions beyond the data that were readily available." In Jones, 619 F.3d at 977-78, the VE reduced his estimate of the number of existing jobs because the claimant's RFC, unlike the DOT for those jobs, was limited to "occasional handling," an approach we concluded "was a perfectly acceptable basis for the [ALJ's] conclusions." Here, the

VE was thoroughly cross-examined as to the basis for her testimony that 330 surveillance systems monitor and call out operator jobs exist in Iowa, and that Welsh could perform "most" of those jobs. After careful review of the administrative record, we conclude that substantial evidence supports the ALJ's finding that a sufficient number of jobs existed in the national and local economies that a person with Welsh's RFC could perform, based on the VE's testimony.

The judgment of the district court is affirmed.

_____