# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-2737

_____

John A. Higgins

*Plaintiff - Appellant*

v.

Commissioner, Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 10, 2018
Filed: August 1, 2018

_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

SMITH, Chief Judge.

This social security case turns on whether the administrative law judge (ALJ)
properly relied on expert testimony about an accommodation commonly found in the

workplace. Concluding the reliance was proper, we affirm the district court's[1] decision upholding the denial of benefits.

## I. *Background*

John Higgins suffers from bipolar disorder, sleep apnea, and Type II diabetes. His conditions are exacerbated by obesity. Higgins applied for a period of disability and disability insurance benefits, as well as supplemental security income, alleging that he became unable to work in 2011. Higgins has two master's degrees and almost enough credits for a third. He has previously worked as a part-time professor for an online university. He lives by himself. He can perform basic life activities, such as drive, shop, prepare meals, clean his apartment, watch television, go for occasional walks, talk with friends, and go to weekly prayer meetings.

After his claim was denied, Higgins obtained review before an ALJ at a hearing. A few months later, but before the ALJ issued a decision, Higgins's physician prescribed him a bariatric chair.[2] The ALJ received this new evidence into the record.

The ALJ directed interrogatories to a vocational expert (VE) regarding the additional evidence. Specifically, the ALJ asked the VE to assume a hypothetical individual like Higgins, with certain limitations, including that "while seated, the individual would require a bariatric chair sufficient to withstand 6 hours per day of the claimant's 425 pounds." Admin. Rec. at 269. He also asked the VE whether there

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

[2]Bariatrics is the "branch of medicine concerned with the prevention and control of obesity and allied diseases." Stedman's Medical Dictionary 203 (28th ed. 2006). As it was later described to the vocational expert in this case, Higgins's chair must be able to withstand his 425 pounds for six hours a day.

are available occupations for individuals with these limitations. The VE responded affirmatively, identifying three sedentary occupations and the approximate number of such jobs available nationally and regionally. Finally, the ALJ asked whether a bariatric chair is an accommodation, defining it, as Higgins requested, as "the acquisition of new equipment not normally found in the workplace, or the modification of equipment or devices normally found in the workplace, or more generally the modification or adjustment of a work environment to enable the individual to function in the job." *Id.* at 270 (citing 42 U.S.C. § 12111). The VE answered: "This would be an accommodation wherein the employer would need to acquire the bariatric chair. In my experience this is a common accommodation for an employer to make for an employee." *Id.* at 274.

Proceeding through the five-step sequential evaluation process, the ALJ denied Higgins benefits. *See* 20 C.F.R. § 416.920(a)(4). He found that Higgins had not engaged in substantial gainful activity since the onset date, and he found that Higgins has severe impairments but that those impairments do not meet or equal the severity of a listed impairment. The ALJ also formulated Higgins's residual functional capacity (RFC) to include the need for a bariatric chair, although noting that need was "somewhat dubious." Admin. Rec. at 13. Higgins could not perform any of his past relevant work, but the ALJ found that Higgins was not disabled because, under step five of the evaluation process, Higgins could perform jobs existing in the economy. The ALJ explained that "even if the claimant required a bariatric chair, the vocational expert indicated this is a common accommodation in the workplace and, even with this added to the claimant's residual functional capacity, she was able to provide a significant number of jobs in the regional and national economies." *Id.* at 13.

Higgins sought but was denied review by the Appeals Council, making the ALJ's decision final and subject to judicial review. *See Thomas v. Berryhill*, 881 F.3d 672, 674 (8th Cir. 2018) (citing *Combs v. Berryhill*, 878 F.3d 642, 645 (8th Cir. 2017)). The district court affirmed the denial of benefits. Higgins appeals.

II. *Discussion*

The parties agree that the issue before us is whether the Social Security Commissioner carried her burden of proving the existence of other jobs in the economy that Higgins can perform. This turns, they also agree, on whether the ALJ properly relied on the VE's testimony about the availability of the identified jobs. Although we review the district court's decision de novo, we "reverse[] the findings of the Commissioner only if they are not supported by substantial evidence or result from an error of law." *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012) (citations omitted).

Higgins contends that the ALJ's decision rested on an assumption derived from the VE's interrogatory answer that employers in the identified occupations would comply with the Americans with Disabilities Act (ADA). Higgins argues that the ALJ's reliance on the VE's opinion necessarily assumed ADA compliance by potential employers. Higgins contends this was error and requires reversal and remand. The Commissioner, on the other hand, points out that the ALJ's interrogatory to the VE included the need for a bariatric chair. Because the VE answered that significant jobs exist that the individual could perform, and she opined that a bariatric chair is a common accommodation in the workplace, the ALJ properly relied on this testimony. Thus, the Commissioner continues, substantial evidence supports the ALJ's decision.

Both parties cite to a decision of ours from more than 20 years ago. *See Eback v. Chater*, 94 F.3d 410, 412 (8th Cir. 1996). The claimant there needed to use a nebulizer at least four times a day. *Id.* at 411. The VE opined that providing special times for nebulizer use "would be a reasonable accommodation that an employer could or should make, particularly considering the ADA." *Id.* at 412 (citation omitted). In other words, the VE assumed that employers would allow breaks for nebulizer use not because he knew that it was a common accommodation, but because in the VE's view, it would be reasonable for an employer to do so. *See id.* We

-4-

reversed the denial of benefits.[3] The VE had "never testified that the cited jobs routinely offer employees breaks during an eight-hour work period as would be necessary for [the claimant's] condition." *Id.* Otherwise stated, the VE did not testify that, as the workplace actually existed at the time, providing such an accommodation—ADA mandated or not—was prevalent.

Not long after *Eback*, we again reversed a case for similar reasons. In *Whitehurse v. Apfel*, the claimant had to elevate her foot two to three times daily for a total of two hours a day. 158 F.3d 987, 987 (8th Cir. 1998). The ALJ held that the claimant was not disabled, finding there was no reason "she could not elevate her foot during work breaks and after work in the evening." *Id.* at 987–88. We explained that "[t]he ALJ failed to develop testimony that sedentary work *is available* that would

---

[3]A statement by the Associate Commissioner of Social Security partly guided our decision to reverse. That statement was:

> [The inquiry into other available jobs] is based on the functional demands and duties of jobs as ordinarily required by employers throughout the national economy, and not on what may be isolated variations in job demands (regardless of whether such variations are due to compliance with anti-discrimination statutes or other factors). Whether or how an employer might be willing (or required) to alter job duties to suit the limitations of a specific individual would not be relevant because our assessment must be based on broad vocational patterns . . . rather than on any individual employer's practices. To support a . . . finding that an individual can perform "other work," the evidence . . . would have to show that a job, which is within the individual's capacity because of employer modifications, is representative of a significant number of other such jobs in the national economy.

*Id.* (alteration and ellipses in original). We emphasize that *Eback*'s quote of the Associate Commissioner's statement is guidance, but not controlling law.

provide [the claimant] with work breaks," and we remanded the case. *Id.* at 988 (emphasis added).

The Fifth Circuit has affirmed the denial of benefits where the VE testified that jobs that provide or would provide a needed accommodation do—in fact—exist. In *Jones v. Apfel*, the claimant argued that the VE "improperly based his opinion on the [ADA]." 174 F.3d 692, 693 (5th Cir. 1999). The Fifth Circuit stated that "a vocational expert should not base his determination of the availability of jobs on the assumption that the ADA requires an employer to accommodate an individual's disability." *Id.* (citing *Eback*, 94 F.3d at 412). But the VE in *Jones* had "opined that specific jobs existed that [the claimant] could perform *and* that would accommodate [his] need to alternate between sitting and standing." *Id.* (emphasis added). When the VE testified that most employers of an assembly line job will accommodate sitting and standing at will, this "suggest[ed] . . . that allowing for an employee to alter between sitting and standing is a prevalent accommodation in the workplace." *Id.* at 694 (citing *Eback*, 94 F.3d at 412).

These cases merely demonstrate that ALJs may properly rely on VE testimony that a certain needed modification is part of the functional workplace. It makes no difference that a particular workplace modification, such as a bariatric chair, might be called an "accommodation" or even a "reasonable accommodation." *See* 42 U.S.C. § 12111(9) (defining "reasonable accommodation" for ADA purposes). The use of the phrase is immaterial. It also makes no difference that a particular modification or accommodation is offered because the ADA requires employers to do so. What matters is the functional workplace as it actually exists. If a particular modification or "accommodation" has become prevalent and is commonly offered—whether considered required by the ADA or not—an ALJ may, of course, consider this evidence in making its determination.

Here, the VE testified based on her expertise that bariatric chairs are, in fact, commonly provided to individuals in the workplace. *See* Admin. Rec. at 274 ("In my experience [the use of a bariatric chair] is a common accommodation for an employer to make for an employee."). In other words, the VE provided evidence that offering this particular accommodation is prevalent. As always, an ALJ may rely on VE testimony about common workplace practices based upon the expert's knowledge and experience. *See Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (citation omitted). Thus an ALJ may properly rely on expert testimony about modifications that exist, or are commonly provided, in the workplace. *See id.*; *see also Whitehurse*, 158 F.3d at 988 (remanding to develop testimony as to whether "sedentary work is available that would provide [the claimant] with work breaks").[4]

The VE also identified jobs that an individual who, like Higgins, needs a bariatric chair, can perform. This VE testimony sufficiently indicates that the "cited jobs routinely offer [the accommodation] as would be necessary for [the claimant's] condition." *Compare Eback*, 94 F.3d at 412.

## III. *Conclusion*

Substantial evidence supports the ALJ's finding that jobs exist in the national economy that Higgins can adjust to, and that finding did not result from an error of law. *See Byes*, 687 F.3d at 915. We therefore affirm.

--------------------------------

--------

[4]This is true even though the VE here answered affirmatively when asked if the provision of a bariatric chair would be an "accommodation" as defined by the ADA. Again, the word "accommodation" itself is not problematic. An item, such as a bariatric chair, can be "a modification or adjustment of a work environment" while at the same time be commonly provided to employees in the workplace. *See* Admin. Rec. at 270 (citing 42 U.S.C. § 12111). The VE testified the bariatric chair is commonly provided in the workplace, and the ALJ properly considered this testimony.