KELLY, Circuit Judge. Carolyn Combs appeals from the district court’s, order affirming the Administrative Law Judge’s (ÁLJ) denial of her application for disability insurance benefits and supplemental security income. Because we conclude that the ALJ failed to fully and fairly develop the record,' we reverse and remand for further factual findings. I. Background - Combs applied for disability benefits on July 2, 2012⅛ alleging a disability onset date of May 17, 2012. She. claims she is disabled as a result of the.combined effects of rheumatoid arthritis, osteoarthritis, asthma,- and obesity. Combs was born on December 24, 1961, and has a ninth grade education. She last worked as a hotel housekeeper and was fired for talking on her cell phone. The ALJ held a hearing on Combs’ application on January 9, 2014, at which Combs, and a Vocational Expert (VE) testified. Combs provided the following information. She is 5'3" tall and weighs 240 pounds. She was first told by a doctor that she had arthritis in August 2011; a little later, she was diagnosed with rheumatoid arthritis by a doctor who prescribed me-loxicam for the arthritis and tramadol for pain. The medications “eased the pain whereas [she] can basically deal with it a little bit, but it didn’t take the pain away, but it made it bearable a little bit.” She has swelling “from [her] knees all the way down to [her] foot,” which is worsened by walking and standing. She can walk for about five minutes at a time, but then she has to stop because of the pain in her lower back, knees, and feet. She can only stand for two or three minutes before having to sit down and prop up her legs, which sometimes lessens the swelling. She can sit for one hour but spends the day changing positions. Her hands sometimes cramp up so much she cannot use them— “they just get stuck.” She has pain daily, and has restless leg syndrome, which disturbs her sleep. She is prescribed amitrip-tyline, which helps but does not eliminate the problem. Combs’ daily activities consist mostly of sitting on her couch or walking around the house in an effort to keep her legs from stiffening. She sometimes goes to her daughter’s house, but because she has trouble getting up from her daughter’s couch, she prefers to sit at home where she can be more comfortable. She can shop only if a motorized cart is available. She can make herself a sandwich, but can only cook for her family if she has a chair in the kitchen, where she can sit down after standing for two or three minutes. She sometimes does dishes. She does not have the strength in her hands to wring mops or wipe surfaces, and she can no longer play with her grandchildren. Combs presented medical records spanning the time period from July 2011 to September 2014 from St. Bernards Regional Medical Center, AR Care, Jones-boro Church Health Center, and NEA Baptist Clinic. Henry Allen, M.D., of AR Care, diagnosed Combs with rheumatoid arthritis in November 2011 and prescribed meloxicam, cyclobenzaprine, and tramadol to treat the arthritis and accompanying pain. Combs has continued treatment with various medical providers for this condition, including Dr. Allen, Beata Majewski, M.D., and Jennifer Long, APN, and these providers continue to prescribe pain medication—including toradol, hydrocodone, and tramadol—for “severe pain” due to her rheumatoid arthritis. X-rays showed severe degenerative changes in both of Combs’ knees, narrowing of the joint space in her wrists and in the fingers of both hands. Treatment notes from Dr. Allen, Dr. Majewski, and APN Long reported swelling, warmth, and tenderness in Combs’ hands, wrists, knees, and ankles, as well as painful range of motion, but “no acute distress” and “normal movement of all extremities.” None of these medical treatment providers offered an opinion about Combs’ ability to function in the workplace. The only medical opinions regarding Combs’ residual functional capacity (RFC)[4] that the ALJ considered were from two state-agency medical consultants: Robert Redd, M.D., who conducted an initial review of Combs’ medical records, and Sharon Keith, M.D., who reviewed Combs’ records at the reconsideration level. Neither doctor examined Combs. Dr. Redd opined that Combs was able to lift ten pounds occasionally and less than ten pounds frequently and was therefore limited to sedentary work. In Dr. Keith’s opinion, Combs was capable of work at the light exertional level and could lift twenty pounds occasionally and ten pounds frequently.[5] Following the hearing, the ALJ issued a decision on July 18, 2014, analyzing Combs’ disability following the five-step sequential evaluation process outlined in 20 C.F.R. § 420.1520(a)—(f). At the first and second steps, the ALJ determined that Combs had not engaged in substantial gainful activity since her alleged disability onset date, and had the following severe impairments: rheumatoid arthritis, fibro-myalgia, and obesity. At step three, the ALJ determined that Combs did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4. The ALJ next considered Combs’ RFC. The ALJ found Combs’ subjective complaints of pain not entirely credible in large part based on her treating physicians’ notations that she was in “no acute distress” and “had normal movement of all extremities.” The ALJ gave “some weight” to Dr. Redd’s opinion but concluded that Dr. Keith’s opinion was more consistent with the record as a whole, and with the notations in the treatment notes specifically. Relying on Combs’ medical records and Dr. Keith’s opinion, as well as the VE’s testimony, the ALJ determined Combs had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: she can only frequently use her hands to finger and grasp; only occasionally climb ladders, ropes, scaffolds, ramps, or stairs; and only occasionally balance, stoop, kneel, crouch, and crawl. Because Combs’ past work as a hotel housekeeper did not require her to perform any work-related activities precluded by her RFC, the ALJ concluded Combs was capable of performing her past relevant work and so was not disabled. Alternatively, the ALJ found that Combs could perform other jobs that existed in significant numbers in the national economy, such as a cashier or a fast food worker. On August 6, 2015, the Appeals Council denied Combs’ request for review. She sought judicial review and, on May 25, 2016, the district court affirmed the Commissioner’s denial of Combs’ claims. In this appeal, Combs challenges the ALJ’s RFC determination. II. Discussion “Because the Appeals Council declined review, the ALJ’s decision is the final decision of the Commissioner.” Lott v. Colvin, 772 F.3d 546, 548 (8th Cir. 2014). “The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.” Id. (quoting 42 U.S.C. § 405(g)). “We review the ALJ’s denial of disability insurance benefits de novo to ensure that there was no legal error and that the findings of fact are supported by substantial evidence on the record as a whole.” Brown v. Colvin, 825 F.3d 936, 939 (8th Cir. 2016). “Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion.” Id. We consider the record as a whole, reviewing both the evidence that supports the ALJ’s decision and the evidence that detracts from it. Id Combs contends the ALJ’s conclusion that she had the RFC to perform light work, and therefore could return to her past relevant work as a hotel housekeeper, is not supported by substantial evidence on the record as a whole. An ALJ determines a claimant’s RFC “based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual’s own description of [her] limitations.” Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).[6] “Because a claimant’s RFC is a medical question, an ALJ’s assessment of it must be supported by some medical evidence of the claimant’s ability to function in the workplace.” Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008) (quoting Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)). The ALJ “may not simply draw his own inferences about plaintiffs functional ability from medical reports.” Strongson, 361 F.3d at 1070. Here, in determining Combs’ RFC, the ALJ had opinions from two reviewing physicians. See Casey, 503 F.3d at 697 (recognizing that an ALJ may rely “on a reviewing physician’s report at step four when the burden is on the claimant to establish an inability to do past relevant work”). Dr. Redd and Dr. Keith each considered the total medical and non-medical evidence in Combs’ file, yet came to conflicting views of Combs’ ability to function in the workplace based on that evidence. Dr. Redd gave Combs a ten-pound weight limit, which would have limited her to sedentary work. See 20 C.F.R. § 404.1567(a) (“Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.”). It is undisputed that had the ALJ accepted Dr. Redd’s opinion regarding Combs’ RFC, Combs would have been found disabled under rule 201,09 of the medical-vocational guidelines due to her age, education, and previous work experience. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, rule 201.09. Viewing the same evidence, Dr. Keith opined that Combs was instead capable of work at the light exertional level. Combs’ dispute centers oh how the ALJ decided which opinion to credit. Citing to Combs’ treating physicians’ notations of “no acute distress” and “normal movements,” the ALJ gave Dr. Keith’s opinion greater weight than Dr. Redd’s opinion because it was “more consistent with [Combs’] record as a whole.” Rather than rely on his own inferences of what those notations meant, Combs asserts, the ALJ should have contacted her medical providers for clarification. Because the ALJ failed to do so, Combs argues, he did not satisfy his duty to fully and fairly develop the record. “Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant’s burden to press his case.” Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004)). We recognize that an ALJ does not “have to-seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped.” Vossen, 612 F.3d at 1016 (emphasis omitted) (quoting Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004)); see also Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005) (duty to seek clarification from treating . physician “arises only if a crucial issue is undeveloped”). But “an ALJ must not substitute his opinions for those of the physician.” Finch v. Astrue, 547 F.3d 933, 938 (8th Cir. 2008) (quoting Ness v. Sullivan, 904 F.2d 432, 435 (8th Cir. 1990)); see also Pate-Fires v. Astrue, 564 F.3d 935, 946-47 (8th Cir. 2009) (noting that ALJs may not “play doctor”). We conclude the ALJ erred in relying on his own inferences as to the relevance of the notations “no acute distress” and “normal movement of all extremities” when determining the relative weight to assign to Dr. Redd’s and’ Dr. Keith’s’opinions. Notably, the Commissioner concedes in her brief that the term' “ ‘no acute distress’ [is not] of particular significance with a chronic condition such as [Combs’] rheumatoid arthritis.” The Commissioner instead argues that the finding of “normal movement of all extremities”. is inconsistent with Combs’ complaints of pain. But the relevance of this finding in terms of Combs’ ability to function in the workplace is not clear: Although Combs’ medical providers consistently note in their treatment records that Combs has a normal range of motion, they likewise consistently diagnose her with rheumatoid arthritis, prescribe medications for “severe pain,” and note “trigger point” and “joint pain with” range of motion. By relying on his own interpretation of what “no acute distress” and “normal movement of all extremities” meant in terms of Combs’ RFC, the ALJ failed to satisfy his duty to fully and fairly develop the record. See Byes v. Astrue, 687 F.3d 913, 915-16 (8th Cir. 2012) (“Failing to develop the record is reversible error when it ddes not contain enough evidence to determine the impact of a claimant’s impairment on [her]' ability to work.”). Accordingly, we conclude remand is necessary so the ALJ may conduct further inquiry as to what relevance Combs’ being in “no acute distress” and having “normal movement of all extremities” has for her ability to function in the workplace. III. Conclusion Accordingly, we reverse and remand for further proceedings consistent with this opinion. . "A claimant’s RFC is what ... he or she can do despite his or her limitations.” Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing 20 C.F.R. § 404.1545). . Light work involves: [Rifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b). To be capable of performing “light work,” a claimant must also be able to stand or walk for six hours of an eight-hour work day. Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995). , In addition, "[i]t is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant’s impairment.” Casey v. Astrue, 503 F.3d 687, 697 (8th Cir. 2007) (quoting Harris v. Barnhart, 356 F.3d 926, 931 (8th Cir. 2004)).