# United States Court of Appeals

### For the Eighth Circuit

_____

No. 19-3421

_____

Tammy Koch

*Plaintiff - Appellant*

v.

Kilolo Kijakazi, Acting Commissioner of Social Security Administration[1]

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Arkansas - Harrison

_____

Submitted: January 12, 2021
Filed: July 14, 2021

_____

Before SMITH, Chief Judge, KELLY and ERICKSON, Circuit Judges.

_____

SMITH, Chief Judge.

---

[1]On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted for Andrew Saul as defendant in this action. *See* Fed. R. App. P. 43(c)(2).

Tammy Koch appeals the district court's order affirming the administrative law judge's (ALJ's) termination of her disability insurance benefits and supplemental security income. Because substantial evidence does not support the termination of benefits, we reverse and remand.

## I. *Background*

In 2014, Koch applied for disability insurance benefits and supplemental security income. She alleged that her disability began in July 2012 due to degenerative disc disease (DDD), bulging disc, irritable bowel syndrome, depression, anxiety, bipolar disorder, and post-traumatic stress disorder (PTSD). Initially, an ALJ denied her claim and then again upon reconsideration. But after Koch filed a written request for a hearing, the ALJ in this case conducted a hearing on April 20, 2016, and issued a partially favorable decision. First, the ALJ concluded that Koch was disabled from February 1, 2014, through December 12, 2016. Second, he concluded that Koch's disability ended on December 13, 2016.

## A. *Relevant Medical History*

In 2009, Koch was in a motor vehicle accident. As a consequence, Koch suffers from ongoing back pain. She has other impairments as well. In March 2014, Koch began receiving pain management treatment from Dr. Ronald Tilley at Interventional Pain Management Associates (IPMA). There, she received multiple lumbar epidural steroid injections to lessen her pain. In March 2014, Dr. Tilley noted that Koch "suffer[ed] chronic lower back pain." Soc. Sec. Tr. at 534, *Koch v. Saul*, No. 3:18-cv-03079-BAB (W.D. Ark. 2018), ECF No. 8. He concluded that she could perform daily activities with the aid of pain medication, her cervical spine had "normal curvature," and "[i]nspection of the lumbar spine reveal[ed] normal lordosis." *Id.* at 536. But Koch's cervical and lumbar range of motion was "greatly reduced." *Id.* At that time, Koch was prescribed 300 milligrams of Gabapentin to be taken four times daily, 50 milligrams of Tramadol to be taken three times daily, and 15 milligrams of Mobic to be taken once daily.

In November 2014, Koch completed a function report and indicated that, among other things, she experienced pain while lifting, twisting, turning, and standing too long and that her pain slowed the completion of her normal daily tasks, such as cooking, cleaning, and shopping.

At the hearing on April 20, 2016, before the ALJ, Koch testified that her condition had worsened since she first applied for disability benefits. She explained that (1) she recently went to the emergency room because of severe pain and swelling that prevented her from walking; (2) she could only walk about 20 feet before needing to rest; (3) her legs went numb after standing for extended periods; (4) she was able to perform light housework; (5) she occasionally required family members' assistance to get dressed; (6) her pain caused her to take much longer to perform normal activities, such as cooking and laundry; and (7) her pain limited her ability to leave the house to grocery shop and attend her son's basketball games. However, Koch stated that she could still push a grocery cart and do some grocery shopping. At times, she was able to make it through hour-long church services twice a week.

The ALJ considered the following medical records that he received after the hearing. In August 2016, Dr. Kathryn McCarthy reviewed scans of Koch's back. Although she noted "degenerative changes with disc desiccation and mild disc bulge," she did not recommend surgery "as it would not provide her an outcome that is evidence based." *Id.* at 1149. Nevertheless, surgeon Dr. Stylianos Rammos performed surgery on Koch's back on October 7, 2016.

Two months later, on December 13, Koch attended a post-surgical follow up with Dr. Rammos, who documented the appointment in a short note, which stated in relevant part:

The patient is a 46[-]year[-]old woman with lumbar spon[d]ylosis, and facet arthropathy L4-S1 with significant axial mechanical pain, for which she underwent instrumented transforaminal fusion L4-S1. The patient's symptoms improved significantly and was discharged home.
She presents today for her 2[-]month follow up.
The patient is very satisfied with her overall surgical outcome.
I will now see her in 4 months with dynamic lumbar spine imaging.

*Id.* at 1039. The note also documented Koch's level of pain at an eight on a ten-point scale.

Shortly thereafter, on December 29, consultive examiner and orthopedist Dr. Ted Honghiran examined Koch and completed a report to send to the Arkansas Disability Determination for Social Security Administration. He indicated the following: (1) Koch "[could not] walk without [a] walker"; (2) Koch had difficulty getting on and off the examination table; (3) Koch was unable to stand on her tiptoes or heels; (4) Koch "[wa]s still being followed by [Dr. Rammos]"; (5) Koch complained that "she ha[d] not been doing much better since her surgery"; (6) Koch "[wa]s taking Gabapentin for pain and also Tramadol and Valium for sleep"; and (7) "[s]he ha[d] difficulty dressing and undressing herself"; and (8) her "range of motion [wa]s severely restricted." *Id.* at 1026–27. Dr. Honghiran also completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." *Id.* at 1030 (emphasis omitted). Dr. Honghiran ultimately opined,

It is my impression that [Koch] has a history of having chronic low back pain with degenerative disk disease and underwent a spinal fusion, which so far has not helped very much. . . . Her prognosis is very poor. I believe that her pain will continue for a long time[,] and I do not think that she will get better to the point that she would be able to go back to work any time soon.

*Id.* at 1027.

On April 11, an x-ray of Koch's lumbar spine revealed no evidence of spinal instability. On April 14, Koch attended a mental diagnostic evaluation by consultive examiner and psychologist Dr. Samuel B. Hester. Dr. Hester noted that Koch "ha[d] made some progress [following her back surgery] but still complain[ed] of chronic pain." *Id.* at 1055 (emphasis omitted). He documented that her current prescriptions were 40 milligrams of Prozac for depression, 50 milligrams of Tramodol for pain to be taken twice daily, 25 milligrams of Nortriptyline for insomnia, 300 milligrams of Gabapentin for nerve pain to be taken three times daily, and 5 milligrams of Diazepam for muscle spasms to be taken as needed. He opined that she could perform most daily activities "but slowly." *Id.* at 1060 (emphasis omitted). In addition, she could do her own shopping, but someone had to accompany her to do the lifting. Notably, Dr. Hester opined that, though Koch had the capacity to "cope with the *mental* demands of basic work tasks," she "may not be able to complete work tasks within an acceptable timeframe due to pain issues." *Id.* at 1061 (emphasis omitted).

On April 24, Nurse Kristie Branscum examined Koch for disability tags for driving. Nurse Branscum stated that Koch "continue[d] to have pain in her lower back and numbness in her feet/legs at times" and "her pain interfere[d] with her activities of daily living." *Id.* at 1133. She noted: "Lumbar spine with normal contour, muscle strength within normal limits, pain in lumbar area with flexion and extension." *Id.* She also included that Koch suffered from chronic pain syndrome. Like Dr. Honghiran, Nurse Branscum also completed a "Medical Source Statement of Ability to Do Work-Related Activities." *Id.* at 1072 (emphasis omitted).

## B. *ALJ's Analysis*

After reviewing the evidence, the ALJ issued a partially favorable decision in September 2017.

1. *Favorable Finding*

Using the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520(a)–(f),[2] the ALJ determined that Koch was "disabled" under the Social Security Act from February 1, 2014, through December 12, 2016. At the first and second steps, the ALJ determined that Koch had not engaged in substantial gainful activity since the alleged onset of her disability and that she had the following severe impairments: DDD of the lumbar spine status post-surgery, chronic pain syndrome, obesity, depressive disorder not otherwise specified, PTSD, and borderline and dependent personality traits. At step three, the ALJ determined that Koch did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.

Prior to step four, the ALJ determined that from February 1, 2014, through December 12, 2016, Koch had the residual functioning capacity (RFC)

> to perform sedentary work as defined in 20 CFR 404.1567(a) except she was limited to occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; and no concentrated exposure to hazards, including no driving as part of work. The claimant was able to perform work where interpersonal contact is incidental to work performed; the

---

[2]The five steps are as follows:

(1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

complexity of tasks is learned and performed by rote, with few variables and little use of judgment; and supervision required is simple, direct, and concrete. However, due to pain, she would miss two or more days of work per month on a regular and consistent basis.

Soc. Sec. Tr. at 15 (emphasis omitted); *see Moore*, 572 F.3d at 523 ("Prior to step four, the ALJ must assess the claimant's . . . RFC . . . , which is the most a claimant can do despite her limitations.").

Based on her RFC, the ALJ concluded at steps four and five that Koch was neither able to perform any past relevant work nor any other work. Thus, the ALJ found that Koch was disabled from February 1, 2014, through December 12, 2016.

## 2. *Adverse Finding*

Determining whether the claimant's disability has ceased may involve up to the following eight steps:

(1) whether the claimant is currently engaging in substantial gainful activity, (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) whether there has been a medical improvement, (4) if there has been medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of his past relevant work activity, and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.

*Dixon v. Barnhart*, 324 F.3d 997, 1000–01 (8th Cir. 2003) (citing 20 C.F.R. § 404.1594(f)). The ALJ performed the eight-step analysis. At step three of the eight-step evaluation, the ALJ concluded that medical improvement had occurred. The ALJ provided one sentence related to the improvement finding: "On follow up to surgery . . . , the claimant reported that she was very satisfied with her overall surgical outcome, and her symptoms had improved significantly." Soc. Sec. Tr. at 22 (citing Dr. Rammos's note).

The ALJ then asserted that Koch's medical improvement "related to the ability to work because there [was] . . . an increase in [Koch's] residual functional capacity." *Id.* (emphasis omitted) (citation omitted). The ALJ had reassessed Koch's RFC and concluded that beginning December 13, 2016, Koch had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except she is limited to occasional climbing of ramps and stairs; no climbing of ladders, scaffolds, or ropes; occasional balancing, stooping, kneeling, crouching, and crawling; and avoidance of concentrated exposure to hazards, including no driving as part of work. The claimant is further able to perform work where interpersonal contact is incidental to work performed; the complexity of tasks is learned and performed by rote, with few variables and little use of judgment; and the supervision required is simple, direct, and concrete.

*Id.* (emphasis omitted).

The ALJ's December 2016 RFC determination tracks the prior RFC but notably omits the following sentence: "However, due to pain, she would miss two or more days of work per month on a regular and consistent basis." *Id.* at 15 (emphasis omitted). The ALJ explained that this omission was appropriate because the "medical evidence as a whole show[ed] significant improvement in her pain level since

surgery, which support[ed] the finding that she would no longer miss work on a regular and consistent basis beginning on December 13, 2016." *Id.* at 25.

The ALJ came to this conclusion by considering Koch's testimony, Dr. Rammos's notes, Dr. Honghiran's reports, Dr. Hester's evaluation, and Nurse Branscum's medical source statement. However, the ALJ appeared to give full weight only to Dr. Rammos, discrediting Koch's "statements about the intensity, persistence, and limiting effects of her symptoms" as "not consistent with the medical evidence of record beginning December 13, 2016, because the evidence of record indicates significant improvement in her condition subsequent to back surgery." *Id.* at 23. The ALJ gave "[s]ome weight" to Dr. Honghiran's report "but little weight . . . to his medical source statement, given the obvious inconsistencies between the claimant's presentation at the time of her visit with him and her visit with her surgeon just 16 days earlier on December 13, 2016." *Id.* He also gave "[s]ome weight" to Dr. Hester's assessment and found that it supported Koch's capacity for work at the unskilled level. *Id.* at 24. He then gave "[s]ome weight" to Nurse Branscum's medical source statement "in so far as it [wa]s consistent with the above residual functional capacity." *Id.*

Because the ALJ concluded that medical improvement occurred relating to Koch's ability to work, the ALJ did not make a finding at step five. At step six, the ALJ concluded that Koch's impairments were severe. Though the ALJ found that Koch was still unable to perform past relevant work, the ALJ concluded, relying on the testimony of a vocational expert, that there were other jobs "exist[ing] in significant numbers in the national economy that [Koch could] perform." *Id.* at 25 (emphasis omitted). Accordingly, the ALJ concluded that Koch was "not disabled" beginning December 13, 2016. *Id.* at 26.

The Social Security Administration Appeals Council ("Appeals Council") denied Koch's subsequent request for review of the ALJ's decision, and the district court affirmed the ALJ's decision.

## II. *Discussion*

On appeal, Koch argues that the ALJ's RFC determination beginning December 13 is not supported by substantial evidence on the record as a whole. Specifically, she contends that the ALJ made three errors in making its RFC determination by (A) improperly discounting her complaints of pain, (B) according inappropriate weight to the medical opinions of record, and (C) drawing improper inferences from the medical records. We agree and reverse.

Although the claimant bears the initial burden to demonstrate that she is disabled, because Koch met that burden, the burden shifted to the Commissioner of the Social Security Administration ("Commissioner") to show that Koch is no longer disabled based on medical improvement. *See Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) (citing *Nelson v. Sullivan*, 946 F.2d 1314, 1315 (8th Cir. 1991) (per curiam) ("If the Government wishes to cut off benefits due to an improvement in the claimant's medical condition, it must demonstrate that the conditions which previously rendered the claimant disabled have ameliorated, and that the improvement in the physical condition is related to claimant's ability to work.")).

"We review the ALJ's denial of disability insurance benefits de novo to ensure that there was no legal error and that the findings of fact are supported by substantial evidence on the record as a whole." *Combs v. Berryhill*, 878 F.3d 642, 645–46 (8th Cir. 2017) (quoting *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016)). "Substantial evidence in the record as a whole" is a more "rigorous" standard than simply "substantial evidence," which is "evidence that a reasonable mind might accept as adequate to support [the Commissioner's] conclusion." *Burress v. Apfel*, 141 F.3d 875, 878 (8th Cir. 1998) (quoting *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir.

1989)). Rather, "[w]e must consider evidence in the record that fairly detracts from, as well as supports, the ALJ's decision." *Delph v. Astrue*, 538 F.3d 940, 945 (8th Cir. 2008). However, we will not reverse the Commissioner's decision merely because we find that "substantial evidence exists in the record that would have supported a contrary outcome." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

Once an ALJ has found that a claimant is, or has been, disabled, he may then determine whether that disability has ceased by applying the medical improvement standard. *Delph*, 538 F.3d at 945. The parties agree that the medical improvement standard applies. Medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with" the claimant's impairments "measured from the most recent favorable decision that the claimant was disabled." *Id.* at 946–47 (quotations omitted). The issue under this standard "is whether the claimant's medical impairments have improved to the point where [s]he is able to perform substantial gainful activity." *Id.* at 945 (citing 42 U.S.C. § 423(f)(1)). It "requires the Commissioner to compare a claimant's current condition with the condition existing at the time the claimant was found disabled and awarded benefits." *Id.* The regulations provide a sequential eight-step analysis, *id.* at 945–46, which the ALJ conducted here.

The ALJ concluded that Koch was no longer disabled because her pain decreased. *See* Soc. Sec. Tr. at 25 (explaining that Koch was no longer disabled because the "medical evidence as a whole show[ed] significant improvement in [Koch's] pain level since surgery, which support[ed] the finding that she would no longer miss work on a regular and consistent basis" due to pain). We disagree and hold that the substantial evidence on the record as a whole does not support the finding that Koch's pain significantly improved to the point where she would no longer miss two days or more of work per month.

-11-

## A. *Koch's Allegations*

First, as Koch argues, the ALJ erroneously discounted her allegations regarding her pain. "The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole." *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). But "an ALJ may not discount a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009).

Here, the evidence as a whole is not inconsistent with Koch's complaints of pain. Rather the evidence supports Koch's allegations and does not show that her pain "significant[ly] improve[d]" post surgery. *See* Soc. Sec. Tr. at 25.

Following December 12, Koch's pain medication prescriptions generally remained the same as those from February 2014 to December 13, 2016. *Cf. Delph*, 538 F.3d at 945 (explaining that "the Commissioner [must] compare a claimant's current condition *with the condition existing at the time the claimant was found disabled* and awarded benefits" (emphasis added)). On December 13, to Dr. Rammos, Koch described her level of pain as an eight out of ten. A couple weeks later, Dr. Honghiran opined that the surgery "so far ha[d] not helped very much. . . . Her prognosis is very poor. I believe that her pain will continue for a long time[,] and I do not think that she will get better to the point that she would be able to go back to work any time soon." Soc. Sec. Tr. at 1027. Dr. Honghiran's assessment was consistent with one of Koch's treating physician's who warned Koch against having surgery, stating that it would not provide an "evidence[-]based" outcome. *Id.* at 1149. In April 2017 after a mental-diagnostic evaluation, Dr. Hester concluded that Koch "may not be able to complete work tasks within an acceptable time frame due to pain issues." *Id.* at 1061 (emphasis omitted).

And Nurse Branscum, who also evaluated Koch in April, noted that, though Koch stated she was "overall doing fair," Koch "continue[d] to have pain in her lower back and numbness in her feet/legs at times," that "her pain interfere[d] with her activities of daily living," and that Koch suffered from chronic pain syndrome. *Id.* at 1133; *cf. Combs*, 878 F.3d at 647 (concluding that an ALJ erroneously "rel[ied] on his own interpretation of what [the notations] 'no acute distress' and 'normal movement of all extremities' meant in terms of [the claimant's] RFC"); *Gude v. Sullivan*, 956 F.2d 791, 794 (8th Cir. 1992) (explaining that a doctor's note that a claimant "continue[d] to do well" was not inconsistent with the claimant's complaints of pain (alteration omitted)); *Fleshman v. Sullivan*, 933 F.2d 674, 676 (8th Cir. 1991) (explaining that the ALJ incorrectly discounted the applicant's complaints of pain based on a physician's note stating she was "doing well" because she could have been doing well for someone with a kidney transplant).

The ALJ determined that Koch's complaints were inconsistent with the medical evidence based on Dr. Rammos's short and general post-surgery follow-up note dated December 13, 2016. The ALJ erred because its determination was not supported by substantial evidence on the record as a whole. The ALJ stated, "the evidence of record indicates significant improvement in her condition subsequent to back surgery" because "[o]n follow up to surgery [on December 13], the claimant reported that she was very satisfied with her overall surgical outcome, and her symptoms had improved significantly." Soc. Sec. Tr. at 22–23.

The ALJ's analysis mischaracterizes Dr. Rammos's notes. The record states in relevant part:

> The patient is a 46[-]year[-]old woman with lumbar spon[d]ylosis, and facet arthropathy L4-S1 with significant axial mechanical pain, for which she underwent instrumented tranforaminal fusion L4-S1. The patient's symptoms improved significantly and was discharged home. She presents today for her 2[-]month follow up.

The patient is very satisfied with her overall surgical outcome.

*Id.* at 1039.

Improved *symptoms* do not necessarily equate to improved *pain*, especially considering that Koch placed her pain at an eight out of ten.[3] And temporary improvement in a patient's symptoms post-operation does not necessarily equate to long-term improvement. Even if the two did equate, significant improvement in symptoms does not reflect a *degree* of improvement that would warrant a conclusion that the patient's pain has subsided sufficiently to enable resumption of work activity.

The ALJ also relied on Dr. Rammos's note that Koch was "very satisfied with her overall surgical outcome." *Id.* at 1039. A physician's opinion as to his patient's satisfaction with his services is not a medical opinion. It is especially insufficient when the full record fails to provide evidence of the kind of medical improvement that would warrant termination of disability benefits. As with "improved symptoms," patient satisfaction cannot be presumed to mean reduced pain, but even if it does, it provides no measure of pain reduction. The only explicit reference to pain in Dr. Rammos's note is Koch's report that her pain level was an eight out of ten. In this context, the conclusory statement that Koch was satisfied with her surgical outcome does not controvert her consistent statements regarding the severity of her pain.

---

[3] *Cf. Fleshman*, 933 F.2d at 676 ("A person who has undergone a kidney transplant may indeed 'feel better' than she did when she was undergoing dialysis, but testimony to that effect is not inconsistent with the pain and confusion that [the claimant] continued to experience, and certainly does not compel the conclusion that she was therefore able to work. The evaluation of pain, after all, cannot be registered with mathematical precision. It is very likely that [she] continued 'to do well' after her 1979 surgery—for someone who has had a kidney transplant.").

-14-

Contrary to the Commissioner's assertions, Koch's April 2017 x-rays revealing no evidence of spinal instability and April 2017 appointment documenting that her spine had normal contour do not belie Koch's complaints of pain. The medical improvement standard requires a comparison between the claimant's current condition and her "condition existing at the time the claimant was found disabled and awarded benefits." *Delph*, 538 F.3d at 945. Here, the ALJ concluded that Koch was disabled between February 2014 and December 2016. During that time, medical records also documented Koch's spine as stable and with normal contour.[4] *Cf. Burress*, 141 F.3d at 880 (emphasizing that the ALJ's determination that the claimant's disability ended because she had not experienced a full-blown syncope episode since her pacemaker was installed was misplaced because she also "did not experience full-blown syncope episodes during the period the Commissioner conceded she was disabled").

### B. *Medical Opinions*

The ALJ also erroneously discounted other physicians' opinions. "The opinion of a treating physician is accorded special deference under the social security regulations and normally entitled to great weight. However, the Commissioner may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence." *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (quotations and citations omitted); *see also Choate v. Barnhart*, 457 F.3d 865, 869 (8th Cir. 2006) ("A treating physician's medical opinion is given controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

---

[4]In March 2014, Dr. Tilley wrote, "Cervical Spine is grossly stable. Inspection Cervical Spine: neck supple with normal curvature . . . . Strength/tone: normal." Soc. Sec. Tr. at 536. The IPMA treatment notes from August 2014 state, "Inspection of the lumbar spine reveals normal lordosis [inward curvature] with no obvious scoliosis or asymmetry noted." *Id.* at 517. Her range of motion in most directions was only "moderately reduced." *Id.*

inconsistent with the other substantial evidence in the case record. These opinions are not automatically controlling, however, because the record must be evaluated as a whole." (cleaned up)). "[A] 'treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements.'" *Kraus v. Saul*, 988 F.3d 1019, 1026 (8th Cir. 2021) (quoting *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996)). The ALJ is required to "'always give good reasons' for the weight afforded to a treating physician's evaluation." *Nowling v. Colvin*, 813 F.3d 1110, 1123 (8th Cir. 2016) (quoting *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005)).

Here, the ALJ appeared to assign less weight to Dr. Honghiran's report and medical source statement, Dr. Hester's assessment, and Nurse Branscum's medical source statement based on Dr. Rammos's note. The ALJ determined that Dr. Honghiran's medical source statement was "obvious[ly] inconsisten[t]" with Koch's appointment 16 days earlier with Dr. Rammos. Soc. Sec. Tr. at 23. Of course, Dr. Rammos was one of Koch's treating physicians, and Dr. Honghiran and Dr. Hester both evaluated Koch at the state agency's request. *Cf. Kraus*, 988 F.3d at 1025 ("Generally, treating physicians' opinions should be given greater weight than opinions from consultants who have never met the claimant and base their opinions solely on the record." (cleaned up)). However, both Dr. Honghiran and Dr. Hester performed in-person evaluations. *Cf. id.* at 1025–26 ("[I]n some instances, opinions from State agency medical and psychological consultants may be entitled to greater weight than the opinions of treating or examining sources." (cleaned up)). And the ALJ was not entitled to discredit their evaluations based on Dr. Rammos's opinion when it "consist[ed] of nothing more than vague, conclusory statements." *Id.* at 1026 (quoting *Piepgras*, 76 F.3d at 236).

It should be noted that Dr. Rammos did not opine on whether Koch was disabled, comment on her ability to work, or compare Koch's pain prior to surgery with her current pain. *Cf. Delph*, 538 F.3d at 945 (explaining that medical

improvement requires that the claimant have improved "to the point where [s]he is able to perform substantial gainful activity"); *Muncy*, 247 F.3d at 734 ("[T]he improvement in the physical condition [must] relate[] to [the] claimant's ability to work." (quotation omitted)); *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("A treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting an ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter and did not do so, particularly when that doctor did not discharge the claimant from treatment.").[5]

In contrast, Dr. Honghiran, Dr. Hester, and Nurse Branscum evaluated Koch in-person and at least provided an assessment regarding her ability to work or perform certain activities. The ALJ's decision to accord less weight to Drs. Honghiran's and Hester's opinions is not supported by substantial evidence on the record as a whole.

## C. *Improper Inferences*

Lastly, as Koch contends, the ALJ drew improper inferences from the medical records, resulting in an RFC not based on substantial evidence.

"An ALJ determines a claimant's RFC 'based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.'" *Combs*, 878 F.3d at 646 (alteration in original) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). "[A] claimant's RFC is a medical question . . . ." *Id.* (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)). Therefore, the ALJ must use "some medical evidence of the claimant's ability to function in the workplace" in order to make a proper RFC assessment; "[t]he ALJ may not simply draw his own inferences about [the claimant's] functional ability from medical reports." *Id.* (cleaned up); *see Hutsell*, 259

---

[5]Dr. Honghiran explained in his report that Dr. Rammos had not discharged Koch from treatment.

F.3d at 712 (explaining that the ALJ erroneously relied on doctors' notes that their patient "was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity").

The ALJ erroneously inferred from Dr. Rammos's note that Koch's satisfaction with her surgical outcome translated to a substantial decrease in pain enabling Koch to resume work activity. By relying on Dr. Rammos's note—which did not opine on Koch's pain or ability to work—instead of the doctors who did opine on Koch's pain and ability to work, the ALJ improperly drew his own inferences about Koch's RFC.[6]

### III. *Conclusion*

We decline to direct the ALJ to issue an immediate award of benefits as Koch requests. Instead, we vacate the district court's judgment and remand with instructions to return the case to the Social Security Administration for a new medical-improvement evaluation consistent with this opinion.[7]

------------------------------------------------

[6]We do not address Koch's argument that the Appeals Council erred by not considering her additional records. Koch asserts that the Appeals Council's failure to consider the additional evidence that she submitted is another basis for reversal. But we do not reach this argument because we conclude that the ALJ's medical improvement analysis warrants reversal based on the information that Koch submitted to the ALJ and that the ALJ reviewed.

[7]Additionally, the motion to withdraw footnote 6 of the Appellee's memorandum brief is granted.