# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3341
_____

Sara Allen Schmitt

*Plaintiff - Appellant*

v.

Kilolo Kijakazi,[1] Acting Commissioner Social Security

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 19, 2021
Filed: March 9, 2022

_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

---

[1]Kilolo Kijakazi has been appointed to serve as Acting Commissioner of Social Security and is substituted as the appellee pursuant to Federal Rule of Appellate Procedure 43(c).

Sara Allen Schmitt appeals the district court's[2] order upholding the Commissioner of the Social Security Administration's (Commissioner) denial of Social Security disability insurance benefits (DIB). Having jurisdiction pursuant to 28 U.S.C. § 1291 and finding that substantial evidence in the record as a whole supports the Commissioner's denial, we affirm.

I.

On February 21, 2016,[3] Schmitt filed an application for DIB pursuant to Title II of the Social Security Act, 42 U.S.C. § 423, alleging a disability with an onset date of January 15, 2012, and an insurance status expiration date of December 31, 2016. Her application was denied initially and again on reconsideration. Schmitt then requested a hearing before an Administrative Law Judge (ALJ), which was granted.

Schmitt has an extensive medical history dating back to 2011, with symptoms including numbness, tingling, and burning in one foot; numbness stretching from her ribcage to her lower extremities; fatigue; spasticity; eye problems; and cognitive difficulties (such as difficulty with recall and organization). In 2012, Schmitt began treatment with Dr. Gary Beaver, a neurologist who diagnosed Schmitt as having multiple sclerosis. That same year, Dr. Beaver referred Schmitt to Dr. Erin Holker, a neuropsychologist, for a neuropsychological evaluation. This evaluation revealed primarily average to above-average results, though Schmitt did demonstrate some difficulty with complex designs, planning, organization, novel problem solving, and immediate recall of visual material. Dr. Holker concluded that Schmitt exhibited moderate executive dysfunction and would benefit from structure, routine, and smaller, simplified tasks.

---

[2]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, adopting the report and recommendations of the Honorable Elizabeth Cowan Wright, United States Magistrate Judge for the District of Minnesota.

[3]The report and recommendation (R&R) sets forth an application date of March 21, 2016, while other documents before the district court and the parties' briefing to this Court set forth an application date of February 21, 2016.

From 2013 through 2016, Schmitt visited Dr. Beaver for check-ups related to her multiple sclerosis. At these visits, Schmitt indicated that she was doing well but that she was suffering from fatigue, and Dr. Beaver observed that Schmitt's motor strength was normal and that she had an unremarkable gait. In 2013, Schmitt began undergoing physical therapy for foot and ankle weakness associated with her multiple sclerosis. She later received physical therapy for other symptoms, such as side and back pain. Additionally, in 2014, Schmitt underwent a double mastectomy and chemotherapy following a breast cancer diagnosis. As a result of that chemotherapy, she reported increased problems with fatigue, neuropathy, and neuropathic discomfort. However, in a 2015 physical therapy assessment form, Schmitt indicated no limitations with her ability to sit, stand, walk, or participate in repetitive activities.

In 2016, Dr. John O'Regan, a licensed psychologist, examined Schmitt and concluded that she suffered from mild neurocognitive disorder and would have difficulty tolerating the stress and pressure associated with the entry-level workplace. In 2016, Dr. Holker completed a second neuropsychological examination of Schmitt. Schmitt's examination results revealed a decline from her 2012 examination and indicated mild executive dysfunction, and Dr. Holker concluded that Schmitt would benefit from structure, routine, work environments free from distractions, and written reminders or checklists.

In 2017, Schmitt began visiting Dr. Andrew Smith, a neurologist, who, in 2018, completed a residual functional capacity (RFC) questionnaire and noted that Schmitt experienced fatigue; poor coordination; numbness, tingling, or other sensory disturbance; increased muscle tension; spasticity; pain; difficulty solving problems; and problems with judgment. Dr. Smith estimated that Schmitt would likely be absent from work more than four days per month as a result of her impairments. Also in 2018, Dr. Beaver created a similar report, summarizing his treatment of Schmitt and explaining that she had issues with fatigue, walking, and stability; numbness of the hands; burning pain; spasticity; sensitivity to heat; depression; difficulty remembering; and difficulty with problem solving, judgment, and speech.

Dr. Beaver opined that Schmitt would not be able to maintain sustained gainful employment.

At Schmitt's hearing before the ALJ, Schmitt, Dr. Karen Butler (a medical expert), and Michael Stern (a vocational expert) testified. Schmitt testified that she has difficulty sustaining concentration, has declining memory, experiences extreme fatigue, and has neuropathy and spasticity in her feet. Schmitt explained that she chose to discontinue taking medication for her multiple sclerosis and recounted that, while she can participate in social activities with up to six people, she finds such activities to be exhausting and confusing. Dr. Butler then testified in regard to Listing 12.02, noting that between 2012 and 2016, Schmitt exhibited a decline in attention, motor function, memory, and processing speed. When asked to evaluate the paragraph B criteria for Listing 12.02, Dr. Butler opined that Schmitt would have work-related limitations requiring Schmitt to find a job in which work is "simple and unskilled" and without a "rapid pace" or "high production goals." Ultimately, Dr. Butler opined that Schmitt did not meet Listing 12.02. Finally, Mr. Stern testified. The ALJ asked Mr. Stern to consider a hypothetical individual with the age, education, and limitations of Schmitt, and in response, Mr. Stern testified that there are jobs that exist in significant numbers in the national economy, such as a merchandise marker, cashier II, or router. Also before the ALJ were third-party statements from Schmitt's husband, daughter, friends, and co-workers, as well as an opinion by non-examining state agency psychological consultants who opined that Schmitt was limited to unskilled work.

The ALJ engaged in the required five-step sequential evaluation process set forth by 20 C.F.R. §§ 404.1520(a)(4), asking whether: Schmitt is engaging in substantial gainful activity (Step 1); Schmitt has a medically determinable impairment that is severe or a combination of impairments that, together, are severe (Step 2); the impairment or combination of impairments meets or medically equals the criteria of a listed impairment (Step 3); Schmitt has the RFC to perform the requirements of her past relevant work (Step 4); and Schmitt is able to do other types of work when considering her RFC, age, education, and work experience (Step 5).

At Step 1, the ALJ determined that Schmitt had not engaged in substantial gainful activity from the date of alleged onset through the date last insured, and at Step 2, the ALJ found that Schmitt has several severe impairments, including multiple sclerosis, remitted breast cancer status post chemotherapy with ongoing neuropathic pain, and cognitive disorder related to multiple sclerosis or history of chemotherapy or both. However, at Step 3, the ALJ concluded that Schmitt's impairments did not meet or medically equal the severity of a listed impairment. At Steps 4 and 5, the ALJ determined that Schmitt had an RFC to perform light work, as defined by 20 C.F.R. § 404.1567(b), as long as that work was limited to simple tasks at a nonproduction pace. Although this determination precluded her from engaging in her past work as an auditor, the ALJ concluded that Schmitt would be able to do other work, such as a merchandise marker, cashier II, or router.

The ALJ accorded little weight to the opinion of consultative examiner Dr. O'Regan because, according to the ALJ, Dr. O'Regan's opinion was inconsistent with the evidence overall; specifically, the ALJ found that Dr. O'Regan's opinion was inconsistent with the formal neuropsychological testing results and the absence of mental health treatment through the date last insured and was not well explained or well supported. The ALJ accorded some weight to the non-examining state agency psychological consultants, to the extent that those consultants' opinions were consistent with the other evidence. The ALJ accorded little weight to the five third-party statements because those statements were authored after the date last insured and discussed Schmitt's *current* impairments, symptoms, and limitations rather than her impairments, symptoms, and limitations as of the date last insured. The ALJ accorded the most weight to Dr. Butler's testimony because her testimony was supported by specific citations to the record, subject to cross-examination, and "completely consistent" with the record evidence. Ultimately, on November 15, 2018, the ALJ concluded that Schmitt was not disabled and denied her application for DIB.

Schmitt sought review from the Appeals Council, but the Appeals Council declined review. Schmitt then filed a complaint in the district court, seeking review

of the Commissioner's final decision. Schmitt and the Commissioner filed cross-motions for summary judgment. On July 30, 2020, the magistrate judge issued an R&R, recommending that the district court deny Schmitt's motion for summary judgment and grant the Commissioner's motion for summary judgment. Schmitt filed objections to the R&R, but on September 10, 2020, the district court adopted the R&R in full, granting the Commissioner's motion and denying Schmitt's motion. Schmitt now appeals.

## II.

On appeal, Schmitt challenges two of the ALJ's findings: first, the finding that Schmitt's impairments did not meet or medically equal Listing 11.09B or 12.02 and second, that Schmitt had the RFC to do light work. Schmitt argues that neither finding was supported by substantial evidence on the record as a whole. "We review de novo the district court's decision to affirm the ALJ's denial of social security DIB . . . ." Gann v. Berryhill, 864 F.3d 947, 950 (8th Cir. 2017). "Because the Appeals Council declined review, the ALJ's decision is the final decision of the Commissioner." Combs v. Berryhill, 878 F.3d 642, 645 (8th Cir. 2017) (citation omitted). "We review the ALJ's denial of disability insurance benefits de novo to ensure that there was no legal error and that the findings of fact are supported by substantial evidence on the record as a whole." Id. at 645-46 (citation omitted). "'Substantial evidence in the record as a whole' is a more 'rigorous' standard than simply 'substantial evidence,' which is 'evidence that a reasonable mind might accept as adequate to support [the Commissioner's] conclusion.'" Koch v. Kijakazi, 4 F.4th 656, 663 (8th Cir. 2021) (alteration in original) (citation omitted). Rather, "[w]e must consider evidence in the record that fairly detracts from, as well as supports, the ALJ's decision." Delph v. Astrue, 538 F.3d 940, 945 (8th Cir. 2008). "However, we will not reverse the Commissioner's decision merely because we find that 'substantial evidence exists in the record that would have supported a contrary outcome.'" Koch, 4 F.4th at 663 (quoting Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)).

"The burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing. To meet a listing, an impairment must meet all of the listing's specified criteria." Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004) (citation omitted). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "For a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Id. at 531 (citation omitted).

Listing 12.02 ("Neurocognitive disorders") contains paragraph A and paragraph B criteria, with paragraph A specifying the medical criteria that must be present in the claimant's medical evidence and paragraph B specifying the functional criteria used to evaluate the limitations of the claimant's disorder. Neurocognitive disorders "are characterized by a clinically significant decline in cognitive functioning," with symptoms including "disturbances in memory, executive functioning[,] . . . visual-spatial functioning, language and speech, perception, insight, judgment, and insensitivity to social standards." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(B)(1)(a). The paragraph B criteria for Listing 12.02 requires that the claimant's disorder result in an "[e]xtreme limitation of one, or marked limitation of two," listed areas of "mental functioning," which include understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Alternatively, Listing 11.09B ("Multiple sclerosis") is met if there is a "[m]arked limitation" in "physical functioning" and in one of the four areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.09(B).[4]

---

[4]The ALJ also considered Listing 11.09A, which is met if there is an extreme limitation resulting from disorganization of motor function in two extremities. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.09(A). However, Schmitt's appeal is limited

Schmitt argues that Listing 11.09B was the listing most compatible with her impairments because it recognizes multiple sclerosis and the fatigue and cognitive impairments associated with multiple sclerosis. Schmitt further argues that because Dr. Butler only testified to Schmitt's inability to meet Listing 12.02, which does not consider fatigue, Dr. Butler did not account for Schmitt's fatigue in her analysis. See Appellant Br. 23 ("[Schmitt's] [c]ounsel suggested that the [multiple sclerosis] listing was the more applicable listing than 12.02 because listing 11.09B considers fatigue which is a debilitating symptom of [multiple sclerosis] . . . . [Schmitt's] [c]ounsel specifically indicated that Dr. Butler could only testify to the cognitive deficits under 12.02 and that it doesn't factor in the fatigue.").

However, we find that there is substantial evidence in the record as a whole to support the ALJ's determination that Schmitt's impairments did not meet or medically equal Listing 11.09B or 12.02. The ALJ explained that, with respect to Listing 12.02, Schmitt did exhibit some moderate limitations in some areas, such as understanding, remembering, or applying information and in interacting with others, but she was able to remind herself to take medications, prepare meals, manage her finances, and travel outside of the home unaccompanied. Additionally, she enjoyed shopping, socialized in small groups, attended events such as the farmers' market, and regularly visited her elderly mother. The ALJ concluded that Schmitt's mental impairment did not cause at least two marked limitations or one extreme limitation, as required by the paragraph B criteria for Listing 12.02. Similarly, with respect to Listing 11.09B, the ALJ found that although Schmitt's medical records revealed several minor deficiencies, such as a subtle tremor in her left hand and mild executive dysfunction, those records did not indicate a marked limitation in physical functioning and one of the four areas of mental functioning as required by Listing 11.09B.

---

to Listing 11.09B, so we do not consider whether there is substantial evidence in the record as a whole to support the ALJ's finding that Schmitt does not have an extreme limitation resulting from disorganization of motor function in two extremities.

Although Schmitt contends that the ALJ should have considered her fatigue, the ALJ expressly acknowledged Schmitt's argument before concluding "that the ratings that the medical expert [(i.e., Dr. Butler)] assigned already factor in the effects of fatigue." Further, as the district court explained, the record featured little evidence of treatment for fatigue, and the issue is not whether Schmitt experienced fatigue as a result of her multiple sclerosis, which we do not doubt, but whether she has established that her fatigue is disabling. See Blakeman v. Astrue, 509 F.3d 878, 882 (8th Cir. 2007). Ultimately, we conclude that substantial evidence in the record as a whole supports the ALJ's determination that Schmitt's impairments did not meet or medically equal Listing 11.09B or 12.02.

Schmitt also asserts that substantial evidence does not support the ALJ's finding that she could perform "light work." A claimant's RFC is "the most" that the claimant can do in a work setting despite her limitations. See 20 C.F.R. § 404.1545(a)(1). "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." Hensley v. Colvin, 829 F.3d 926, 931-32 (8th Cir. 2016) (citation omitted). "'Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.' However, there is no requirement that an RFC finding be supported by a specific medical opinion." Id. at 932 (citation omitted). "[I]n evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." Cox v. Astrue, 495 F.3d 614, 619-20 (8th Cir. 2007) (citation omitted); cf. Combs, 878 F.3d at 646 ("The ALJ 'may not simply draw his own inferences about plaintiff's functional ability from medical reports.'" (citation omitted)).

The ALJ justified its RFC determination by explaining that Schmitt's subjective allegations of symptoms (regarding the intensity, persistence, and limiting effects of those symptoms) were inconsistent with the objective medical evidence

and her activities of daily living. For example, the ALJ noted that, contrary to Schmitt's complaints of extreme limitations, her gait was unimpaired, she was able to drive, she was planning a vacation to Mexico, and her neuropsychological functioning was within normal limits. Although Schmitt argues that the ALJ erred by attributing little weight to her treating physicians' opinions, the ALJ provided legitimate reasons for discounting those opinions: Dr. Beaver's opinion alternated between reciting current symptoms and opining that Schmitt's limitations would have applied since 2012, and Dr. Smith began treating Schmitt after the date last insured. See Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012) ("'[A]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.' Ultimately, the ALJ must 'give good reasons' to explain the weight given the treating physician's opinion." (citations omitted)). Further, although Schmitt may disagree with how the ALJ weighed her subjective complaints against the objective evidence, the ALJ's analysis was guided by factors previously endorsed by this Court, such as Schmitt's daily activities and functional restrictions. See, e.g., Noerper v. Saul, 964 F.3d 738, 745 (8th Cir. 2020) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). Despite Schmitt's dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence. See Johnson v. Colvin, 788 F.3d 870, 872 (8th Cir. 2015).

Schmitt also argues that the ALJ erred by attributing little weight to the third-party statements provided, "[b]ut an ALJ properly may give less than controlling weight to lay-witness statements that are inconsistent with the record." Schwandt v. Berryhill, 926 F.3d 1004, 1012 (8th Cir. 2019). Although not required to give an explanation as to the weight attributed to these third-party statements, see Igo v. Colvin, 839 F.3d 724, 731 (8th Cir. 2016), the ALJ explained that the third-party statements describe recent limitations observed after the relevant time period (i.e., between the alleged onset date of January 12, 2012, and the insurance status expiration date of December 31, 2016). In conclusion, we find that substantial evidence in the record as a whole supports the ALJ's RFC determination.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____